1  **BRIAN T. DUNN, ESQ. (SBN 176502)**
   Email: bdunn@cochranfirm.com
2  **EDWARD LYMAN (SBN 248264)**
3  Email: bdunn@cochranfirm.com
   **THE COCHRAN FIRM CALIFORNIA**
4  4929 Wilshire Boulevard, Suite 1010
5  Los Angeles, California 90010
   Telephone: (323) 435-8205
6  Facsimile: (323) 282-5280

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

7

8  Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN  DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOPE MAGEE, individually and as Successor in Interest to JACOREY SHAW, deceased; PAUL SHAW, individually and as Successor in Interest to JACOREY SHAW, deceased, | **CASE NO.:** _____ |
| | **COMPLAINT FOR DAMAGES** |
| Plaintiffs, | 1.  **42 U.S.C. § 1985 (Conspiracy to Violate Civil Rights)** |
| v. | 2.  **42 U.S.C. § 1986 (Failure to Prevent Conspiracy to Violate Civil Rights)** |
| ADAM CHRISTIANSON, in his official capacity as SHERIFF-CORONER FOR STANISLAUS COUNTY, and in his individual capacity; BILL POOLEY, in his official capacity as SHERIFF-CORONER FOR TUOLOMNE COUNTY, and in his individual capacity; SUNG-OOK BAIK, M.D.; FRANK LEYVA; RODNEY HOBBS; OLIVER IMLACH; HUNTER ANGELA A/K/A H.B. ANGELA; JERRY LINDSEY; PATRICIA QUINN; TIMOTHY MCCARTHY;  ___[NAME REDACTED]____; COUNTY OF TUOLUMNE, a municipal entity; and COUNTY OF STANISLAUS, a municipal entity, and DOES 1-10, | 3.  **42 U.S.C. § 1983 (Supervisory Liability for Civil Rights Violations)** |
| | 4.  **42 U.S.C. § 1983 (Municipal Liability Based on Unconstitutional Failure to Train)** |
| | 5.  **42 U.S.C. § 1983 (Based on Substantive Due Process Violations)** |
| | 6.  **42 U.S.C. § 1983 (Based on Unconstitutional Denial of Medical Care)** |
| | 7.  **42 U.S.C. § 1983 (Based on Unconstitutional Failure to Protect)** |

inclusive,

Defendants.

**DEMAND FOR JURY TRIAL**

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

## JURISDICTION AND VENUE

1.      Jurisdiction is vested in this court under 28 U.S.C. § 1343(3)-(4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

2.      Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(a)-(b).

## PARTIES

3.      Plaintiffs HOPE MCGEE and PAUL SHAW (hereinafter referred to as "Plaintiffs") are, and at all relevant times herein were, residents of the County of Los Angeles and State of California.

4.      Plaintiffs HOPE MCGEE and PAUL SHAW, the surviving birth parents of decedent JACOREY SHAW are Successors in Interest to decedent JACOREY SHAW, and are entitled to bring certain causes of action herein alleged pursuant § 337.30 of the California Code of Civil Procedure. (Attached hereto is a declaration designating HOPE MCGEE and PAUL SHAW as Successors in Interest to JACOREY SHAW, furnished herewith pursuant to § 337.32 of the California Code of Civil Procedure, and a true and correct copy of the death certificate for JACOREY SHAW, will be furnished herewith under separate cover pursuant at § 377.32 of the California Code of Civil Procedures.)

5.      Upon information and belief, Defendant ADAM CHRISTIANSON is, and at all relevant times mentioned herein was, a resident of Stanislaus County, California. At all times relevant to the events referenced herein, ADAM CHRISTIANSON was acting in his official capacity as SHERIFF/CORONER for the COUNTY OF STANISLAUS, California. ADAM CHRISTENSON is sued in his individual and official capacities.

6. Upon information and belief, Defendant BILL POOLEY is, and at all relevant times mentioned herein was, a resident of Tuolomne County, California. At all times relevant to the events referenced herein, BILL POOLEY was acting in his official capacity as SHERIFF/CORONER for the COUNTY OF TUOLOMNE, California. BILL POOLEY is sued in his individual and official capacities.

7. Upon information and belief, Defendant SUNG-OOK BAIK, M.D. is, and at all relevant times mentioned herein was, a resident of Stanislaus County, California. At all times relevant to the events referenced herein, SUNG-OOK BAIK, M.D., a forensic pathologist, was acting in the course and scope of his employment for the STANISLAUS COUNTY SHERIFF-CORONER, and under the supervision of SHERIFF-CORONER ADAM CHRISTIANSON.

8. Upon information and belief, Defendant FRANK LEYVA is, and at all relevant times mentioned herein was, a resident of Stanislaus County, California. At all times relevant to the events referenced herein, FRANK LEYVA was acting in the course and scope of his employment as a Detective/Investigator with the STANISLAUS COUNTY SHERIFF-CORONER and under the direct supervision of SHERIFF-CORONER ADAM CHRISTIANSON and SUNG-OOK BAIK, M.D.

9. Upon information and belief, Defendant RODNEY HOBBS is, and at all relevant times mentioned herein was, a resident of Tuolomne County, California. At all times relevant to the events referenced herein, RODNEY HOBBS, a sworn peace officer, was acting in the course and scope of his employment as a Detective/Investigator and Deputy Coroner with the TUOLUMNE COUNTY'S SHERIFF/CORONER'S OFFICE, and under the supervision of SHERIFF-CORONER BILL POOLEY.

10. Upon information and belief, Defendant OLIVER IMLACH is, and at all relevant times mentioned herein was, a resident of Tuolomne County, California. At all times relevant to the events referenced herein, OLIVER IMLACH,  a sworn peace officer,  was acting in the course and scope of his employment as a Detective/Investigator and Deputy Coroner with the TUOLUMNE COUNTY'S

THE COCHRAN FIRM CALIFORNIA
4929 Wilshire Bl.
Suite 1010.
(323)435-8205

1  SHERIFF/CORONER'S OFFICE, and under the supervision of SHERIFF-CORONER

2  BILL POOLEY.

3      11.     Upon information and belief, Defendant HUNTER ANGELA, A/K/A H.B.

4  ANGELA (hereinafter "H.B. ANGELA") is, and at all relevant times mentioned herein

5  was, a resident of Tuolomne County, California. At all times relevant to the events

6  referenced herein, H.B. ANGELA, was acting in the course and scope of his employment

7  as a Warden for the Sierra Conservation Center and the California Department of

8  Corrections and Rehabilitation. (hereinafter "CDCR"). H.B. ANGELA is sued in his

9  individual capacity only.

10     12.     Upon information and belief, Defendant JERRY LINDSEY is, and at all

11  relevant times mentioned herein was, a resident of Tuolomne County, California. At all

12  times relevant to the events referenced herein, JERRY LINDSEY, was acting in the

13  course and scope of his employment as a Warden for the Sierra Conservation Center and

14  the California Department of Corrections and Rehabilitation. (hereinafter

15  "CDCR").JERRY LINDSEY is sued in his individual capacity only.

16     13.     Upon information and belief, Defendant PATRICIA QUINN is, and at all

17  relevant times mentioned herein was, a resident of Tuolomne County, California. At all

18  times relevant to the events referenced herein, PATRICIA QUINN, was acting in the

19  course and scope of her employment as a Warden for the Sierra Conservation Center and

20  the California Department of Corrections and Rehabilitation. (hereinafter "CDCR").

21  PATRICIA QUINN is sued in her individual capacity only.

22     14.     Upon information and belief, Defendant TIMOTHY MCCARTHY is, and at

23  all relevant times mentioned herein was, a resident of Tuolomne County, California. At

24  all times relevant to the events referenced herein, TIMOTHY MCCARTHY, was acting

25  in the course and scope of his employment as a Lieutenant for the Sierra Conservation

26  Center and the California Department of Corrections and Rehabilitation (hereinafter

27  "CDCR"), and was under the supervision of H.B. ANGELA, PATRICIA QUINN, and

28  JERRY LINDSEY.  TIMOTHY MCCARTHY is sued in his individual capacity only.

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

4

15.

[THIS SECTION REDACTED PURSUANT TO PROTECTIVE ORDER]

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

16.     Defendant COUNTY OF TUOLUMNE is, and at all relevant times mentioned herein was, a municipal entity or political subdivision of the United States, organized and existing under the laws of the State of California.

17.     Defendant COUNTY OF STANISLAUS is, and at all relevant times mentioned herein was, a municipal entity or political subdivision of the United States, organized and existing under the laws of the State of California.

18.     Plaintiffs are informed and believe that at all times relevant herein, that DOE DEFENDANTS 1-10, were employed in various capacities by the California Department of Corrections and Rehabilitation (hereinafter "CDCR"), and/or the COUNTY OF STANISLAUS, and/or the COUNTY OF TUOLOMNE, and, acted under color of law, and in the course and scope of their employment with the California Department of Corrections and Rehabilitation (hereinafter "CDCR"), and/or the COUNTY OF STANISLAUS, and/or the COUNTY OF TUOLOMNE.

19.     Unless otherwise specified, all individual defendants are sued herein in both their official and individual capacities.

20.     Plaintiffs are unaware of the true names and capacities, or counties of residence of those Defendants named herein as DOE Defendants. Plaintiffs will amend this Complaint to allege said Defendants' true names and capacities when that information becomes known to them. Plaintiffs are informed, believe, and thereon allege that these DOE Defendants are legally responsible and liable for the incident, injuries,

1  and damages hereinafter set forth, and that each of said Defendants proximately caused

2  the injuries and damages by reason of negligent, careless, deliberately indifferent,

3  intentional, willful, or wanton misconduct, including the negligent, careless, deliberately

4  indifferent, intentional, willful, or wanton misconduct in creating and otherwise causing

5  the incidents, conditions, and circumstances hereinafter set forth, or by reason of direct

6  or imputed negligence or vicarious fault or breach of duty arising out of the matters

7  herein alleged. Plaintiffs will seek leave to amend this Complaint to set forth said true

8  names and identities of the unknown named DOE Defendants when they are ascertained.

9      21.    Plaintiffs are informed, believe, and thereon allege that at all times herein

10  mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator

11  of each of the remaining Defendants, and in doing the things hereinafter alleged, were

12  acting within the scope of such agency, employment, and/or conspiracy and with the

13  permission and consent of other co-Defendants.

14                                  **Relevant Tolling Information**

15      22.    This Complaint arises out of the death of Plaintiffs' son, Jacorey Shaw, who

16  lost his life on September 6, 2018 while incarcerated at the Sierra Conservation Center.

17  The events alleged in the Complaint concern allegations of a civil conspiracy involving

18  the individual named defendants. The last overt act alleged in furtherance of this

19  conspiracy occurred on April 1, 2019, and concerns the official certification of Mr.

20  Shaw's death certificate. Facts related to the individual defendants' participation in the

21  civil conspiracy alleged herein did not become known to Plaintiffs until March of 2021,

22  and could not have been discovered sooner. Additionally, this action is brought under the

23  authority of CRC Emergency Rule 9, which would operate to toll the limitations period

24  for this action from April 6, 2020 until October 1, 2020.

25                              **FACTS COMMON TO ALL COUNTS**

26      23.    This Complaint arises out of the in-custody death of Plaintiffs' birth son,

27  Jacorey Shaw, which occurred on Thursday September 6, 2018.

28      24.    At approximately 12:22 p.m. on September 6, 2018, inmate Jacorey Shaw,

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

26 years of age, was pronounced dead in the Triage and Treatment Area of the Sierra Conservation Center ("SCC"), a correctional institution organized and existing under the management authority of the California Department of Corrections and Rehabilitation ("CDCR"). Prior to that day, Jacorey Shaw had exhibited no serious health problems at any time in his 26 years, had never been hospitalized for any illness or injury, and, having recently passed a comprehensive physical examination, Mr. Shaw was one of the select inmates at the SCC who were deemed physically fit for the vigorous physical training involved in the first phase of an overall firefighter training program, which required the completion of an intense Physical Fitness Training ("PFT") program, which was the precursor to a more advanced Fire Fighter Training ("FFT") program which was offered to provide firefighter training to participating inmates at SCC.

25. For Jacorey Shaw, and the fellow inmates in his PFT class supervised by SCC Teacher/Coach Dennis Jordan-Curasi, September 6, 2018 was "test day", which historically marked the final right of passage at the conclusion of the PFT program. The test day activities included approximately two and one-half hours of strenuous physical exercises, each of which, pursuant to the long standing requirements of the CDCR, were to be completed within specified periods of time, and were historically designed to require successful applicants to demonstrate a high level of physical aptitude in order to pass the test within the time periods specified by the CDCR.

26. Jacorey Shaw passed each of the arduous physical activities on his test, but at great cost. At approximately 11:08 a.m. that morning, Mr. Shaw collapsed and fell unconscious on a crowded basketball court several minutes after successfully completing the approximately two hours and thirty minutes of strenuous physical activities of the PFT. The ambient temperature during the duration of the test was over 90°F, and steadily rose during the duration of the testing period.

27. The training regimen for the PFT, which was directly supervised at all levels by teacher/coach Dennis Jordan-Curasi, had been in existence for the approximately two decades, and every aspect of the test day exercises were meticulously regimented, and

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

contained specific physical activities to be undertaken by each participant at various predetermined times throughout the duration of the testing, in a manner. However, on this day, the test was different. It contained an additional exercise test, requiring participants to jog an additional one-third of a mile at the very end of the test without rest or water immediately after running a mile in under 9 minutes. Prior to this day, the "9 minute mile" had historically marked the end of the test, in a manner unchanged for decades.

28.    Towards the end of the test, Jacorey Shaw was beginning to exhibit the objective symptoms of severe heat exhaustion, and his body was faltering. At the onset of the additional one-third of a mile jog, like all the other participants who had successfully completed the test day training, Mr. Shaw had already been participating in approximately two hours and thirty minutes of strenuous physical exertion in over 90 degree rising heat, and the ambient temperature in the testing area had reached between ninety-five and 100 degrees towards the end of the testing period.

29.    After having successfully completed the final additional lap of testing, Jacorey Shaw was suffering from the advanced stages of a heat related illness, and was suffering from a very serious medical emergency. Several minutes after the test was finally over, having made his way to the basketball courts adjacent to the testing area, Jacorey Shaw collapsed, pleading for water to anyone who would listen. Moments later, he would lose consciousness, which he never regained.

30.    Far from an accident, Mr. Shaw's death was the predictable consequence of several factors, each of which was the exclusive responsibility of the personnel at the SCC who were entrusted with protecting the health and safety of the inmates under their care, including Mr. Shaw. A few of the more significant factors that contributed to Mr. Shaw's preventable loss of life on the day of the incident are as follows:

### Prior to September 6, 2018

31.    Prior to September 6, 2018, SCC supervisors H.B. ANGELA, PATRICIA QUINN, and/or JERRY LINDSAY and DOES 1-5 deliberately and recklessly failed to

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

1  implement any form or training protocols to address the predictable and recurring danger

2  of heat related illnesses among SCC inmates, including the most fundamental protocols

3  mandated by the CDCR by actions and inactions which included, but were not limited to:

4      a.    A complete lack of compliance with each and every aspect of the

5          implementation and maintenance CDCR's policies aimed at the prevention

6          of heat related injuries, heat related illness and/or heat stroke among at risk

7          inmates housed in the SCC;

8      b.    A complete lack of compliance with each and every aspect of the

9          implementation and maintenance CDCR's policies aimed at the prevention

10          of heat related injury and illness in the PFT;

11      c.    A complete lack of training of SCC personnel, including Teacher/Coach

12          Dennis Jordan- Curasi, regarding the existence of, implementation of, or

13          practical application of the CDCR's regulatory protocols to protect the

14          health and safety of SCC;

15      d.    A complete lack of training of SCC personnel, including Dennis Jordan

16          Curasi, regarding the existence of, implementation of, or practical

17          application of the CDCR's regulatory protocols to protect the health and

18          safety of the SCC inmates in the PFT;

19      e.    A deliberate failure to ensure any institution-wide safety measures aimed at

20          identifying, correcting, and preventing inmates' recurring and predictable

21          exposure to health hazards caused by heat related illnesses;

22      f.    A deliberate failure to ensure any institution-wide safety measures aimed at

23          training SCC personnel regarding PFT inmates' recurring and predictable

24          exposure to health hazards caused by heat related illnesses;

25      g.    Deliberately and consciously deciding to include an additional physical

26          exercise requirement at the conclusion of an approximate two and a half

27          hour workout on the testing day in Jacory Shaw's PFT class, in reckless

28          disregard of the potential heat related illnesses facing inmates required to

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

9

1   test in ambient temperatures of over ninety degrees.

2   **On September 6, 2018**

3   32.   On the September 6, 2018 test day, Mr. Shaw participated in approximately

4   two and one-half hours of strenuous physical activity, including an additional 1/3 mile

5   jog, which comprised a longer and more arduous period of exercise than had ever been

6   administered on a testing day in the PFT.  Throughout the approximately two and one-

7   half hour duration of the test day exercise period, the ambient temperature in the areat

8   where Mr. Shaw was performing his test day exercises was well over 90 degrees, and

9   escalated throughout the duration of the test.

10   33.   During the test, Mr. Shaw did not receive the most minimal levels of

11   hydration necessary to sustain the arduous physical activities he was required to endure

12   as a condition of passing the PFT.

13   34.   As the strenuous workout regimen progressed on this day, Mr. Shaw began

14   to exhibit the clear signs of a serious medical emergency caused by the combined effects

15   of heat related illness coupled with dehydration, and this fact was readily apparent to any

16   person who observed Mr. Shaw in the final stages of the test, including the SCC

17   personnel, including, at a minimum, the Teacher/Coach Dennis Jordan Curasi who

18   oversaw the PFT, [

19

20   [THIS SECTION REDACTED PURSUANT TO PROTECTIVE ORDER]

21

22   ]

23   **After September 6, 2018**

24   35.   Upon information and belief, pursuant to an express and/or implied

25   agreement among INDIVIDUAL DEFENDANTS, and each of them, that was agreed

26   upon and assented by each of the INDIVIDUAL DEFENDANTS prior to September 6,

27   2018, the INDIVIDUAL DEFENDANTS, engaged in an agreement to falsify, distort,

28   and/or cover up the true circumstances surrounding the death of any inmate at the SCC

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323) 435-8205

1  and/or in the PFT that died as a result of a heat related illness or injury occurring on the

2  premises of the SCC and under the supervision of CDCR personnel. This concerted

3  effort manifested itself in the combined efforts of several INDIVIDUAL DEFENDANTS

4  to classify Jacorey Shaw's death as a "natural" death, based on a nonexistent pre-existing

5  heart disease, while deliberately ignoring, suppressing, and denying the existence of any

6  and all evidence demonstrating that  Mr. Shaw was exposed to the effects of

7  approximately two and one-half hours of extreme physical exertion in extreme heat, and

8  likely exhibited the effects of heat exhaustion, heat stroke, and/or any other form of heat

9  related injury and illness. Pursuant to this conspiracy, the efforts of SCC supervisors

10  H.B. ANGELA, PATRICIA QUINN, TIMOTHY MCCARTHY, and JERRY LINDSAY,

11  each of whom acted in the course and scope of their employment with the CDCR as

12  supervisors at the SCC included, but were not limited to deliberately failing to conduct

13  any form of investigation of any inmate witnesses and/or SCC personnel concerning the

14  physical condition of Mr. Shaw at any time before 11:08 a.m. on September 6, 2018,

15  which is the moment in which Mr. Shaw collapsed unconscious several minutes after

16  completing the final test of the PFT.

17      36.      Sometime after September 6, 2018, all videotaped footage of events that

18  occurred in the SCC training area went missing. It was either destroyed or not preserved

19  in some manner. There exists, however, clear and perfectly preserved video evidence of

20  events occurring after 11:08 a.m. in the SCC testing area, as well as the adjacent areas at

21  the SCC, including the basketball courts where Mr. Shaw collapsed several minutes after

22  he finished the PFT test. Upon information and belief, SCC supervisors H.B. ANGELA,

23  PATRICIA QUINN, and/or JERRY LINDSAY and DOES 1-4 deliberately ordered,

24  and/or caused to ordered, the destruction of any and all SCC video footage depicting

25  events occurring in and around the testing area from 8:00 a.m. to 11:00 a.m., which was

26  the time of Mr. Shaw's test. This footage would have undeniably captured Mr. Shaw in

27  the final stages of his test, when he was probably exhibiting objective and obvious

28  symptoms reflecting advanced stages of heat exhaustion or some other form of heat

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

related illness. Upon information and belief, SCC supervisors H.B. ANGELA, PATRICIA QUINN, and/or JERRY LINDSAY ordered the destruction of this video evidence pursuant to an express or implied agreement which existed prior to September 6, 2018 to falsify, distort, and/or cover up the true circumstances surrounding the death of any inmate at the SCC and/or in the PFT that died as a result of a heat related illness or injury occurring on the premises of the SCC and under the supervision of CDCR personnel.

37.     Upon information and belief, SCC supervisors H.B. ANGELA, PATRICIA QUINN, JERRY LINDSAY and DOES 1-5 deliberately failed to include, and/or deliberately ordered the exclusion of, any mention of the true circumstances surrounding Mr. Shaw's death in any internal CDCR investigation into the circumstances surrounding Mr. Shaw's death.

38.     Upon information and belief, SCC supervisors H.B. ANGELA, PATRICIA QUINN, JERRY LINDSAY and DOES 1-5 deliberately falsified, altered, and/or fabricated documents, and/or deliberately ordered the falsification, alteration, and/or fabrication of documents which reflected evidence of the fact that the ambient temperature at the SCC testing area was over 90 degrees between the hours of 8:00 a.m. and 11:00 a.m., which is the time in which when Jacorey Shaw underwent the final testing of the PFT. Pursuant to this coordinated effort, SCC supervisors H.B. ANGELA, PATRICIA QUINN, JERRY LINDSAY and/or DOES 1-5 instructed, and or, ordered the instruction of employees to falsify, alter, and fabricate documents which reflected evidence of the fact that the ambient temperature at the SCC testing area was over 90 degrees between the hours of 8:00 a.m. and 11:00 a.m. on the morning of September 6, 2018, which is the time in which when Jacorey Shaw underwent the final testing of the PFT, and further ordered, and/or caused Teacher/Coach Dennis Jordan-Curasi to be ordered to falsely report that the ambient temperature in the testing area was less than 90 degrees during the testing period. At all times relevant to the events described herein, SCC supervisors H.B. ANGELA, PATRICIA QUINN, TIMOTHY MCCARTHY, and/or

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010.
(323)435-8205

1  JERRY LINDSAY had direct and actual knowledge of the fact that between the hours of

2  8:00 a.m. and 11:00 a.m. on the morning of September 6, 2018, which is the time in

3  which when Jacorey Shaw underwent the final testing of the PFT, the ambient

4  temperature in the PFT testing area rose to well over 90 degrees.

**Lt. Timothy McCarthy Fabricates the Actual Temperature at the
SCC to Cal/OSHA Inspector Raymond Smith**

7      39.    In documents first received by plaintiffs on or around the first week in

8  March of 2021, plaintiffs learned, for the first time, that LT. TIMOTHY MCCARTHY,

9  while acting in the course and scope of his employment with the CDCR and SCC,

10  deliberately provided false and misleading information to an Inspector from the

11  California Division of Occupational Safety and Health ("Cal/OSHA") regarding the

12  ambient temperature at the SCC from the hours of approximately 8:30 a.m. and 11:00

13  a.m. on September 6, 2018, when Mr. Shaw underwent the final testing of the PFT.

14  Specifically, in a document request sheet propounded by Cal/OSHA Inspector Raymond

15  Smith, which specifically asked LT. TIMOTHY MCCARTHY, as a representative of the

16  SCC, to provide documentation of the temperature at the SCC for the 14 day period

17  preceding September 6, 2021, LT. TIMOTHY MCCARTHY provided reports, which

18  purported to be from the National Weather Service, which reported the temperature on

19  September 6, 2018 at 11:03 a.m. to be 84°F, rising to 85°F at 12:03 p.m. The

20  documentation LT. TIMOTHY MCCARTHY provided to Cal/OSHA Inspector

21  Raymond Smith was deliberately misleading, as these documents reported the

22  temperature from the unincorporated area of Green Spring CA, which is approximately

23  21 miles from Jamestown, CA where the SCC is located. More significantly, the

24  geographical elevation of Green Spring, CA is approximately 3136 feet, which is more

25  than two times the geographical elevation of Jamestown, which is 1427 feet. With full

26  knowledge of the fact that meteorologically speaking, temperatures cool at higher

27  elevations, when LT. TIMOTHY MCCARTHY provided the temperature from Green

28  Spring, and passed this off as being the temperature from Jamestown, he did so with the

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010.
(323)435-8205

direct knowledge that a temperature reading from a location approximately 1427 feet higher in elevation would yield a substantially lower temperature than would be obtained from the actual location where Mr. Shaw died. In deliberately providing this fabricated temperature reading to Cal/OSHA Inspector Raymond Smith, LT. TIMOTHY MCCARTHY deliberately sought to obfuscate the true ambient temperature in the SCC testing area on the morning of September 6, 2018, which LT. TIMOTHY MCCARTHY knew was, in reality, well over 90°F. This was a deliberate and calculated attempt to absolve SCC personnel from the legal and moral responsibility for exposing inmate Jacorey Shaw to an unduly unsafe and hazardous period of prolonged physical exertion in temperatures over 90°F which, in reality, is the real reason why Jacorey Shaw died.

40.    Upon information and belief, when LT. TIMOTHY MCCARTHY deliberately misled Cal/OSHA Inspector Raymond Smith by providing documents which fabricated the true temperature at the SCC on the days requested by Cal/OSHA Inspector Raymond Smith, he did so at the direction of, under the immediate supervision of, for the benefit, and at the behest of supervisors H.B. ANGELA, PATRICIA QUINN, JERRY LINDSAY, and DOES 1-5.

41.    Upon information and belief, when LT. TIMOTHY MCCARTHY deliberately misled Cal/OSHA Inspector Raymond Smith by providing documents which fabricated the true temperature at the SCC on the days requested by Cal/OSHA Inspector Raymond Smith, he did so pursuant to an express and/or implied agreement with supervisors H.B. ANGELA, PATRICIA QUINN, JERRY LINDSAY, and DOES 1-5 to falsify, distort, and/or cover up the true circumstances surrounding the death of any inmate at the SCC and/or in the PFT that died as a result of a heat related illness or injury occurring on the premises of the SCC and under the supervision of CDCR personnel.

42.    In a further effort to falsify, distort, and cover up the true circumstances surrounding the death of Jacorey Shaw, LT. TIMOTHY MCCARTHY, repeatedly referenced a "possible heart condition" in his description of a cause of Mr. Shaw's death in documents prepared by LT. TIMOTHY MCCARTHY for Cal/OSHA Inspector

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

1  Raymond Smith. Upon information and belief, in falsely reporting a "possible heart

2  condition" as the cause of Mr. Shaw's demise, and deliberately failing to reference any

3  possibility of a heat related illness and/or heat related injury as even being considered as

4  a cause of Mr. Shaw's death, LT. TIMOTHY MCCARTHY was acting based on

5  information provided to him by RODNEY HOBBS and DR. SUNG-OOK BAIK of the

6  STANISLAUS COUNTY OFFICE OF THE SHERIFF-CORONER, who, respectively

7  would subsequently author and furnish falsely investigative data surrounding the sham

8  autopsy report referenced herein.

9      43.    Not surprisingly, on October 3, 2018, due to the multiple interwoven

10  components of false, misleading, and fabricated information provided to him in

11  connection with his investigation, Raymond Smith, in his capacity as Cal/OSHA

12  Compliance Safety and Health Officer, issued a "NOTICE OF NO ACCIDENT-

13  RELATED VIOLATION AFTER INSPECTION" regarding the September 6, 2018

14  incident at the Sierra Conservation Center, which found no violations of any CDCR

15  safety protocols in connection with the the death of Jacorey Shaw. The sham autopsy

16  report prepared by DR. SUNG-OOK BAIK, discussed in detail below, was signed by

17  DR. SUNG-OOK BAIK one day earlier, on October 2, 2018. Upon information and

18  belief, this demonstrates that prior to September 6, 2018, ALL INDIVIDUAL

19  DEFENDANTS had a  predetermined agreement to falsify, distort, and/or cover up the

20  true circumstances surrounding the death of any inmate at the SCC who died as a result

21  of a heat related illness or injury occurring on the premises of the SCC and under the

22  supervision of CDCR personnel, which, in this instance, included Jacorey Shaw.

23                              **The Autopsy Report**

24      44.    In order to absolve themselves of the moral and legal responsibility for the

25  fact that Jacorey Shaw's death was directly and proximately caused by heat stroke and/or

26  heat related illnesses, the individual defendants, working separately and in concert,

27  engaged in a deliberate and concerted effort to falsify and distort Jacorey Shaw's autopsy

28  report, which was conducted by the STANISLAUS COUNTY OFFICE OF THE

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

SHERIFF-CORONER, which had, for consideration, contracted the COUNTY OF TUOLUMNE to perform Jacorey Shaw's autopsy.

45.     In connection with the investigation provided to/and or conducted by  the STANISLAUS COUNTY OFFICE OF THE SHERIFF-CORONER into the death of Jacorey Shaw, TUOLOMNE COUNTY SHERIFF-CORONER Detective/Investigator RODNEY HOBBS reported that Jacorey Shaw appeared physically fit and was doing physical training on September 6, 2018 when he collapsed, further reporting that Mr. Shaw "was jogging and collapsed within the prison training grounds appeared physically fit and was doing physical training on September 6, 2018 when he collapsed".  All of these statements were entirely false, and when RODNEY HOBBS furnished this information to the  STANISLAUS COUNTY OFFICE OF THE SHERIFF-CORONER, he did so deliberately with the specific intent of falsifying and misreporting the true circumstances surrounding the death of Jacorey Shaw.

46.     Pursuant to the terms of a prior contractual agreement, although Mr. Shaw died in TUOLOMNE COUNTY, his autopsy was performed by DR. SUNG-OOK BAIK of the STANISLAUS COUNTY OFFICE OF THE SHERIFF-CORONNER on September 13, 2018. As will be thoroughly explored below, there are numerous autopsy findings that are grossly misinterpreted and the entirety of DR. SUNG-OOK BAIK's opinions and conclusions are completely lacking in any scientific foundation. This erroneous autopsy report is based in part on the fact that there are numerous deficiencies and glaring omissions surrounding Mr. Shaw's death investigation, which led to erroneous conclusions in the autopsy report. As will be thoroughly explored below, for these reasons, accepted medical protocols dictate that this autopsy falls below the standard of care and does not meet the basic requirements as detailed in the National Association of Medical Examiner's (NAME) Forensic Autopsy Performance Standards and the NAME Accreditation Guidelines.

47.     The autopsy report states that Jacorey Shaw was a well-developed, well nourished man measuring 68 inches tall and weighing 190 pounds. DR. SUNG-OOK

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

BAIK made no mention of Mr. Shaw being overweight or obese in his description of the body.

48.     According to the autopsy report, the heart was reported to be 425 grams. The left ventricle was measured to be 1.5. cm in maximal thickness and the right ventricle was measured to be 0.5 cm in maximum thickness. The inner one-third of the left ventricular myocardium was described as pale when compared to the other areas of the myocardium.

49.     In sworn testimony given on March 3, 2021 and March 3, 2021, DR. SUNG-OOK BAIK testified that he did not have an independent recollection of Mr. Shaw's autopsy.

50.     On September 13, 2018 DR. SUNG-OOK BAIK performed an autopsy on the remains of Mr. Shaw without a full understanding of the circumstances associated with the death of Jacorey Shaw. In his aforementioned sworn testimony, DR. SUNG-OOK BAIK stated that he may have been provided some information by the police, but did not make any notes regarding what he might have been told. DR. SUNG-OOK BAIK additionally stated that he did not have any information about the temperature on the day that Mr. Shaw died. Despite not knowing critical details about the circumstances of the death, DR. SUNG-OOK BAIK conducted the autopsy and rendered opinions.

51.     The following exchange took place during the sworn testimony of DR. SUNG-OOK BAIK:

QUESTION: WOULD IT BE FAIR TO SAY THAT YOU DIDN'T RECEIVE ANY INFORMATION ABOUT THE TEMPERATURE ON THE DAY THAT MR. SHAW DIED?

ANSWER: THAT'S RIGHT.

QUESTION: AND WOULD IT BE FAIR TO SAY YOU DIDN'T RECEIVE ANY INFORMATION ABOUT THE TEMPERATURE BECAUSE THE SHERIFF DIDN'T PROVIDE YOU ANY INFORMATION ABOUT THE TEMPERATURE ON THE DAY THAT MR. SHAW DIED?

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

ANSWER: THAT'S RIGHT.

52.     When asked about heat-related deaths, DR. SUNG-OOK BAIK testified that a "heat-related illness, this depends on the weather. If the weather is so hot, maybe we consider that. If the weather is not hot, there is less possibility of hyperthermia." DR. SUNG-OOK BAIK further testified that in order to determine if a death is heat-related, he would need information regarding the weather.

53.     With respect to the autopsy, DR. SUNG-OOK BAIK testified that dehydration means dry skin. According to accepted medical protocols, this analysis is overly simplistic and not useful to determine or rule out the existence of dehydration in a decedent. According to accepted medical protocols, dry skin is a very subjective finding and would not be an accurate way to determine dehydration in a case in which an autopsy is performed seven days after a decedent's passing, such as was the case with the autopsy of Jacorey Shaw.

54.     In his sworn testimony, DR. SUNG-OOK BAIK testified that a forensic pathologist could test, or cause to be tested, ocular fluid (also called "vitreous fluid") for the presence of electrolytes. DR. SUNG-OOK BAIK could have ordered this test to determine if Mr. Shaw was suffering from the effects of dehydration prior to his demise, but deliberately chose not to.

55.     Regarding the presence of urine in the bladder, accepted medical protocols hold that, although non-specific, a lack of urine would be consistent with a diagnosis of dehydration. In the autopsy report, DR. SUNG-OOK BAIK failed to describe whether any urine was present in the bladder, in contravention of accepted medical protocols.

56.     Mr. Shaw's remains arrived at the STANISLAUS COUNTY OFFICE OF THE CORONER on September 10, 2018, and were weighed at 180 lbs. upon arrival. Inexplicably, the autopsy report sets forth Mr. Shaw's weight at 190 lbs. DR. SUNG-OOK BAIK, who set forth "obesity" as a contributing factor to Jacorey Shaw's death, had no explanation as to why Mr. Shaw's weight was ten pounds heavier in the autopsy report, as compared to his weight upon arrival at his office. Mr. Shaw's height and

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

weight are reported differently in various records. The autopsy report indicates that a height and weight of 5'8 and 190 pounds. Records from the STANISLAUS COUNTY SHERIFF'S DEPARTMENT have Mr. Shaw's weight as 180 pounds and the Coroner Death Natural Report has Mr. Shaw at 5'10 and 183 pounds. A 5'8 man weighing 190 pounds would equate to a body mass index (BMI) of 28.9 and a 5'10 man weighing 180 pounds would equate to a BMI of 25.8. Accepted medical protocols hold that a BMI between 25.0 and 19.9 would not be classified as obese. According to accepted medical protocols, Jacorey Shaw was not obese when he died, and obesity did not cause or contribute to his death.

57.    DR. SUNG-OOK BAIK proffered the opinion that Jacorey Shaw died from a fatal cardiac arrhythmia due to cardiomyopathy and he based this opinion on several autopsy findings. DR. SUNG-OOK BAIK reported that Mr. Shaw's heart was enlarged and that a heart weight of 425 grams was abnormal. DR. SUNG-OOK BAIK testified that a normal heart for Mr. Shaw would be 270 grams. Additionally, DR. SUNG-OOK BAIK reported that Mr. Shaw had left and right ventricular hypertrophy. DR. SUNG-OOK BAIK further reported that Mr. Shaw's left ventricle was 1.5 cm think and the right ventricle was 0.5 thick. In his sworn testimony, DR. SUNG-OOK BAIK testified that a normal thickness of the left ventricular myocardium would be 1.2 cm, and that a normal thickness of the right ventricular myocardium would be 0.2-0.3 cm. According to accepted medical protocols, DR. SUNG-OOK BAIK's opinions regarding the heart are entirely lacking in scientific foundation, and are completely erroneous. According to accepted medical protocols, for Mr. Shaw, a heart weight of 425 grams would not be abnormal. Medical literature supports the conclusion that a 425 gram heart for a man of Mr. Shaw's height and weight would be completely normal. (*See* "Quantitative Anatomy of Human Heart", Mayo Clin. Proc., February 1988, Vol. 63). Accepted medical protocols hold that the high end of normal for the thickness of the left ventricle is 1.5 cm and the high end of normal for the thickness of the right ventricle is 0.5 cm. Hence, according to accepted medical protocols, Jacorey Shaw had a normal sized heart.

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010.
(323)435-8205

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

58.     In the autopsy report, DR. SUNG-OOK BAIK reported that the inner 1/3 of the left ventricular myocardium was pale. According to accepted medical protocols, this is a completely subjective finding, and could either represent a possible pathology or a completely normal finding. According to accepted medical protocols, microscopic slides of Mr. Shaw's heart tissue would definitively prove the existence or nonexistence of coronary heart disease or any other heart condition that may cause a myocardial infarction, in a manner that would become a permanent part of the scientific data supporting any conclusions regarding Mr. Shaw's autopsy findings. Although DR. SUNG-OOK BAIK could have easily ordered the creation of microscopic slides that would have definitively determined whether Mr. Shaw was in fact suffering from some form of preexisting heart condition prior to his death, in deliberate contravention of accepted medical protocols DR. SUNG-OOK BAIK deliberately failed to do so.

59.     Upon information and belief, the reason DR. SUNG-OOK BAIK failed to order the creation of any microscopic slides of Mr. Shaw's heart tissue was due to the fact that such reliable scientific data would undermine and definitively disprove DR. SUNG-OOK BAIK's intentionally false conclusion that Jacorey Shaw's death was caused by a preexisting heart condition, an opinion which DR. SUNG-OOK BAIK knew was totally false and unsupportable by any form of reliable scientific data when he prepared and signed off on Mr. Shaw's autopsy report.

60.     According to the accepted medical protocols as reflected in the NAME Accreditation Guidelines, it is standard practice to take photographs of the body as part of the autopsy procedure. DR. SUNG-OOK BAIK did not take, nor did he order any member of his staff to take, photographs of Mr. Shaw's body at any time during the autopsy.  In his sworn testimony, DR. SUNG-OOK BAIK stated that photographs are only taken on homicides or deaths that are deemed "suspicious". This sworn testimony demonstrates that DR. SUNG-OOK BAIK had ruled out any suspicious circumstances prior to conducting the autopsy.

61.     The Toxicology Requisition Form for Mr. Shaw's autopsy falsely indicates

1  that a drug overdose was "probable", which was, in fact, quickly disproved. After

2  receiving the toxicology results, which were negative for any controlled DR. SUNG-

3  OOK BAIK issued the cause and manner of death, concluding that Mr. Shaw died of

4  natural causes due to a preexisting heart condition. This was done despite not having

5  even a partial understanding of the specific circumstances related to and surrounding

6  Jacorey Shaw's death.

7      62.    Based on all of the foregoing, accepted medical protocols hold that, based

8  on the autopsy findings contained the the autopsy report of DR. SUNG-OOK BAIK,

9  Jacorey Shaw did not have a heart disease and did not die as a result of cardiomyopathy.

10     63.    Upon information and belief, in the 24 hour period after the autopsy was

11  conducted, DR. SUNG-OOK BAIK and/or FRANK LEYVA and/or DOES 6-10 caused

12  and/or allowed Mr. Shaw's remains to severely decompose, and released the remains to

13  the Plaintiffs' selected mortuary on the afternoon of September 14, 2018 in a severely

14  decomposed condition in a deliberate effort to render impossible and/or prevent any

15  evidence of the true condition of MR. SHAW's remains to be examined, seen, or tested

16  by third persons.

17                      **The Death Certificate**

18     64.    Jacorey Shaw was pronounced dead at the SCC at 12:22 p.m. on the

19  afternoon of **September 6, 2018**. His autopsy was conducted seven days later, on

20  **September 13, 2018**. The autopsy report was completed and signed by DR. SUNG-OOK

21  BAIK on **October 2, 2018**.

22     65.    Inexplicably, the TUOLUMNE COUNTY Office of the Assessor Recorder

23  did not issue the death certificate pertaining to Jacorey Shaw's death until **April 1, 2019**,

24  approximately seven months after Jacorey Shaw died. Upon information and belief, this

25  extreme delay in issuing the death certificate was the result of the INDIVIDUAL

26  DEFENDANTS, working in concert with DOES 1-10 to falsify, distort, and obfuscate

27  the true circumstances surrounding Mr. Shaw's death at the SCC.

28     66.    The actual death certificate that was finally issued on April 1, 2019, a true

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

and correct copy of which is attached herein, was inexplicably not signed by BILL POOLEY, who was the elected TUOLOMNE COUNTY SHERIFF-CORONER during this time period. Rather, the death certificate was signed and executed by two sworn peace officers originally hired with the TUOLUMNE COUNTY SHERIFF'S DEPARTMENT, and later purportedly employed in the capacity as "Deputy Coroners", including OLIVER IMLACH and RODNEY HOBBS, neither of whom have any formal medical training which would allow them to practice medicine and/or forensic pathology.

67.     Upon information and belief, at all relevant times, RODNEY HOBBS and OLIVER IMLACH were directly supervised by, acting at the behest of, and under the actual and apparent authority of TUOLOMNE COUNTY SHERIFF-CORONER BILL POOLEY. Upon information and belief, prior to September 6, 2018, BILL POOLEY, RODNEY HOBBS, and OLIVER IMLACH had and actual, express, and/or implied agreement to falsify, distort, and/or cover up the true circumstances surrounding the death of any inmate who may lose his life at the SCC from heat related illnesses, heat related injuries, and/or heat stroke occurring under the supervision of SCC personnel. Upon information and belief, RODNEY HOBBS and OLIVER IMLACH received additional financial compensation, benefits, and/or other forms of valuable consideration for the specialized work that RODNEY HOBBS and OLIVER IMLACH performed at the behest of TUOLOMNE COUNTY SHERIFF-CORONER BILL POOLEY.

68.     The official death certificate, which was finally issued on April 1, 2019, was certified and signed by RODNEY HOBBS and OLIVER IMLACH, both of whom have no connection to the medical profession whatsoever, and instead were sworn peace officers employed by, and acting in the course and scope of their employment with the office of the TUOLOMNE COUNTY SHERIFF-CORONER. The final certified death certificate lists Jacorey Shaw's death as being associated with a "FATAL CARDIAC ARRHYTHMIA". Also listed on the death certificate certified and signed by RODNEY HOBBS and OLIVER IMLACH, is "ARTERIOSCLEROTIC CORONARY ARTERY"

THE COCHRAN FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

1    and the word "OBESITY". The death certificate further classifies Mr. Shaw's death as

2    being "NATURAL".

3        69.    The death certificate was fraudulent, in that it was intended by ALL

4    INDIVIDUAL DEFENDANTS to set forth the wrong cause and manner of death. ALL

5    INDIVIDUAL DEFENDANTS knew that in reality, Jacorey Shaw's death was caused by

6    and directly related to, the combined effects of heat exhaustion, heat related illnesses

7    and/or heat stroke, each of which are medical etiologies that had their inception during

8    the PFT occurring on the morning of September 6, 2019, as opposed to any kind of

9    preexisting heart disease that predated September 6, 2019.

10        **The SCC's Injury and Illness Program**

11        70.    Prior to September 6, 2018, the CDCR had implemented specific policies,

12    procedures, and regulations that had the express purpose of identifying and correcting

13    hazards posed by heat related illnesses to inmates housed at CDCR facilities, including

14    the SCC, who may be at risk to the health hazards caused by prolonged exposure to

15    excessive ambient temperatures. The CDCR's regulations involved the implementation

16    of seasonal safety measures designed to (1) recognize the specific identifiers of heat

17    related illnesses and inmates that are uniquely susceptible to the health hazards

18    associated with heat exposure, and (2) implement workable safety protocols in CDCR

19    correctional facilities to protect the inmate population from being exposed to such health

20    hazards.

21        71.    All of the events that occurred on the morning of September 6, 2018,

22    culminating in Jacorey Shaw's totally preventable death, demonstrate that Jacorey Shaw

23    was subjected to precisely the exact kind of health risks that the CDCR's seasonal safety

24    regulations were designed to prevent and protect inmates from having to endure. It

25    follows the events which culminated in Mr. Shaw's death demonstrate that the SCC

26    either deliberately failed to implement the CDCR's safety regulations, or that the SCC

27    did not know that such safety regulations existed.

28        72.    Documents first received the plaintiffs in March of 2021, which were

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

1 contained in the above mentioned Cal/OSHA investigative materials, demonstrate that
2 the former is true, as the Cal/OSHA investigation revealed a series of detailed
3 documents, several of which were signed, and apparently authored, by SCC supervisor
4 H.B. ANGELA on January 4, 2018, several months before the death of Mr. Shaw.
5 Documents detailing the SCC's injury and illness program contained lofty policy
6 statements recognizing the health hazards associated with heat related pathologies, and
7 further outlined specific procedures to be followed by SCC personnel which were
8 specifically tailored to adhere to the CDCR's mandate to (1) recognize and (2)
9 implement specific safety protocols aimed at protecting inmates from the health hazards
10 associated with heat related illnesses in warmer months. The SCC's injury and illness
11 program even had specific procedures to be followed by the SCC staff when the ambient
12 temperature exceeded 90°F at the SCC, each of which were designed to ensure that the
13 inmate population would be adequately hydrated and kept out of the sun for prolonged
14 periods of time. The problem in this case is that, notwithstanding the existence of wide
15 ranging safety protocols that, if implemented, would have protected Mr. Shaw's health
16 and prevented his death, the SCC supervisors H.B. ANGELA, PATRICIA QUINN, and
17 JERRY LINDSEY deliberately failed to implement any of the procedures in their own
18 written injury and illness programs, and consequently, coach Dennis Jordan-Curasi failed
19 to follow any of the rules set forth in the SCC's injury and illness program. The result of
20 this failure to implement these safety protocols is that Jacorey Shaw was made to endure
21 approximately two and one-half hours of rigorous physical exertion without adequate
22 hydration and without being in a shaded area as the ambient temperature climbed to well
23 over 90°F. This is why Mr. Shaw died.
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

**FOR THE FIRST CAUSE OF ACTION**

**(By ALL PLAINTIFFS, as Successors in Interest to Jacorey Shaw, deceased Against ADAM CHRISTIANSON, BILL POOLEY, SUNG-OOK BAIK, M.D., FRANK LEYVA, RODNEY HOBBS, OLIVER IMLACH, H.B. ANGELA, PATRICIA QUINN, JERRY LINDSEY, TIMOTHY MCCARTHY, and [          REDACTED          ] (Hereinafter Collectively Referred to as "INDIVIDUAL DEFENDANTS") and DOES 1-10 for Violations of Civil Rights [42 U.S.C. § 1985]) (Conspiracy to Violate Civil Rights)**

73.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint.

74.     This cause of action is set forth herein to redress the deprivation, under color of statute, ordinance, regulation, policy, custom, practice, and/or usage, of rights, privileges, and/or immunities secured to Jacorey Shaw by the Constitution of the United States, the provisions of which include, but are not limited to, the right to equal protection of laws and the right to be free from cruel and unusual punishments, as guaranteed by the Fourteenth, Eighth, and Fifth Amendments to the United States Constitution, among other constitutional provisions.

75.     At all times relevant to the acts and omissions herein alleged, the INDIVIDUAL DEFENDANTS, and each of them, at all times acted under color of law, and in the course and scope of their employment with their respective employers, including the CDCR, SCC, COUNTY OF TUOLUMNE, and COUNTY OF STANISLAUS.

76.     As reflected in the foregoing paragraphs of this Complaint, the SCC leadership staff, which included H.B. ANGELA, PATRICIA QUINN, JERRY LINDSAY, and DOES 1-5 deliberately failed to implement any safety measures aimed at protecting the health and safety of inmates that endured the uniquely arduous testing day exertions, which exposed Mr. Shaw to prolonged physical exertion and dehydration in

THE COCHRAN FIRM CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

heat that surpassed 90°F, proximately causing Mr. Shaw's totally preventable death. Thereafter, pursuant to an express and/or implied agreement which predated September 6, 2018, each of the INDIVIDUAL DEFENDANTS, acting separately and in concert, deliberately obfuscated the true circumstances surrounding Mr. Shaw's death in various ways, and conspired to falsely ascribe Mr. Shaw's death to a preexisting heart disease, in a manner that furthered no rational governmental objective or purpose.

77.    In connection with the above described events, SCC supervisors H.B. ANGELA, PATRICIA QUINN, JERRY LINDSAY, and DOES 1-5 deliberately and consciously denied the equal protection of the laws in a manner that furthered no rational governmental objective or purpose, to the following classes of persons, each of whom included Jacorey Shaw, as follows:

a.    By being denied the benefit of safety protocols aimed at preventing heat related illnesses, inmates at the SCC were denied the equal protection of the laws, as compared to other similarly situated inmates at other CDCR facilities located in areas in which seasonal heat in warmer months could expose such inmates to the risk of heat related injuries and illnesses.

b.    By having endure an unsafe, untested, and uniquely hazardous additional prolonged exercise requirement in extreme heat at the conclusion of the time in which the test day exercises had historically ended, inmates involved in Jacorey Shaw's PFT class were denied the equal protection of the laws, as compared to other similarly situated inmates in other PFT classes within the SCC.

78.    The decision making process that resulted in the above referenced denials of equal protection of the laws was deliberately undertaken, and consciously chosen among other considered alternatives, by H.B. ANGELA, PATRICIA QUINN, JERRY LINDSAY, and DOES 1-5. Thereafter, pursuant to an express and/or implied agreement which predated September 6, 2018, each of the INDIVIDUAL DEFENDANTS, acting separately and in concert, made possible the above referenced denials of equal protection

THE COCHRAN FIRM CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

of the laws by ensuring there would be no accountability for these civil rights violations by deliberately falsifying, obfuscating, and covering up the true circumstances surrounding Mr. Shaw's death in various ways, ultimately conspiring to falsely ascribe Mr. Shaw's death to a preexisting heart disease which the INDIVIDUAL DEFENDANTS, and each of them, knew was false.

79.     Upon information and belief, H.B. ANGELA, PATRICIA QUINN, JERRY LINDSAY, and DOES 1-5, would not have undertaken the acts and omissions which denied Jacorey Shaw the equal protection of the laws had they not known that they would be absolved of any accountability for their actions. Put another way, the above referenced civil rights violations were made possible because, prior to undertaking the unconstitutional acts and omissions referenced herein, H.B. ANGELA, PATRICIA QUINN, JERRY LINDSAY, and DOES 1-5 knew that they could violate Mr. Shaw's civil rights, as well as the civil rights of any other similarly situated inmate, with the full knowledge that the rest of the INDIVIDUAL DEFENDANTS would protect them and cover up their unconstitutional acts and omissions.

80.     As a direct and proximate result of the wrongful, intentional, and malicious acts and omissions of the individual defendant, Plaintiffs' decedent, Jacorey Shaw, suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, grief, shock, humiliation, indignity, embarrassment, and apprehension prior to his death, all to his damage in a sum to be determined at trial.

81.     Plaintiffs are informed, believe, and thereupon allege, that in unreasonably causing the death of Plaintiffs' decedent as described herein, the INDIVIDUAL DEFENDANTS acted willfully, maliciously, knowingly, with reckless disregard and callous indifference to the known consequences of their acts and omissions, and purposefully with the intent to deprive Jacorey Shaw of his federally protected rights and privileges, and did in fact violate the aforementioned rights and privileges, thereby warranting punitive and exemplary damages against the individual defendant in an amount to be proven at trial.

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010.
(323)435-8205

82.     Plaintiffs are entitled to and hereby demands costs, attorneys' fees, and expenses pursuant to 42 U.S.C. § 1988.

## FOR THE SECOND CAUSE OF ACTION

**(By ALL PLAINTIFFS, as Successors in Interest to Jacorey Shaw, deceased, Against ALL INDIVIDUAL DEFENDANTS and DOES 1-10 for Violations of Civil Rights [42 U.S.C. § 1986]) (Failure to Prevent Conspiracy to Violate Civil Rights)**

83.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint.

84.     At all times relevant to the acts and omissions herein alleged, the INDIVIDUAL DEFENDANTS, and each of them, at all times acted under color of law, and in the course and scope of their employment with their respective employers, including the CDCR, SCC, COUNTY OF TUOLUMNE, and COUNTY OF STANISLAUS.

85.     Prior to September 6, 2018, ALL INDIVIDUAL DEFENDANTS, and each of them, had knowledge of the deliberate failure among the SCC supervisory staff members to deny SCC inmates safety protocols aimed at the prevention of heat related injuries and illnesses in a manner that violated the civil rights of SCC inmates by denying them the equal protection of the laws, as described above, and/or had direct knowledge of the actual, express, and/or implied agreement among ALL INDIVIDUAL DEFENDANTS to falsify, distort, and/or cover up the true circumstances surrounding the death of any inmate who may lose his life at the SCC from heat related illnesses, heat related injuries, and/or heat stroke occurring under the supervision of SCC personnel. Notwithstanding this knowledge ALL INDIVIDUAL DEFENDANTS, each of whom had the power to prevent or aid in preventing the commission of the above mentioned conspiracy to violate the civil rights of SCC inmates, including Jacorey Shaw, deliberately refused to take any actions to prevent the civil rights violations referenced herein, which ultimately caused the death of Jacorey Shaw.

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

86.    As a direct and proximate result of the wrongful, intentional, and malicious acts and omissions of the individual defendant, Plaintiffs' decedent, Jacorey Shaw, suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, grief, shock, humiliation, indignity, embarrassment, and apprehension prior to his death, all to his damage in a sum to be determined at trial.

87.    Plaintiffs are informed, believe, and thereupon allege, that in unreasonably causing the death of Jacorey Shaw as described herein, the INDIVIDUAL DEFENDANTS acted willfully, maliciously, knowingly, with reckless disregard and callous indifference to the known consequences of their acts and omissions, and purposefully with the intent to deprive Plaintiffs' decedent of his federally protected rights and privileges, and did in fact violate the aforementioned rights and privileges, thereby warranting punitive and exemplary damages against the INDIVIDUAL DEFENDANTS in an amount to be proven at trial.

88.    Plaintiffs are entitled to and hereby demands costs, attorneys' fees, and expenses pursuant to 42 U.S.C. § 1988.

### FOR THE THIRD CAUSE OF ACTION

**(By PLAINTIFFS HOPE MCGEE and PAUL SHAW Against ADAM CHRISTIANSON, BILL POOLEY, SUNG-OOK BAIK, M.D., H.B. ANGELA, PATRICIA QUINN, JERRY LINDSEY, and DOES 1-10 for Violations of Civil Rights [42 U.S.C. § 1983]) (Supervisory Liability for Civil Rights Violations)**

89.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint.

90.    In conspiring to violate Mr. Shaw's civil rights, as described in the foregoing paragraphs of this Complaint, SUPERVISORY DEFENDANTS ADAM CHRISTIANSON, BILL POOLEY, SUNG-OOK BAIK, M.D., H.B. ANGELA, PATRICIA QUINN, JERRY LINDSEY, and DOES 1-5, actively deprived, and directed the deprivation of Jacorey Shaw's civil rights, including those secured to him by the

THE COCHRAN FIRM CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

1  Constitution of the United States and the laws of the United States, including, but not

2  limited to, the Eighth Amendment's right to be free from cruel and unusual punishment,

3  and the right to equal protection of laws, as guaranteed by the Fourteenth and Fifth

4  Amendments to the United States Constitution.

5      91.    As described in the foregoing paragraphs of this Complaint,

6  SUPERVISORY DEFENDANTS ADAM CHRISTIANSON, BILL POOLEY, SUNG-

7  OOK BAIK, M.D.,  H.B. ANGELA, PATRICIA QUINN, JERRY LINDSEY, and DOES

8  1-5 subjected Jacorey Shaw to the above described civil rights violations, which denied

9  him the equal protection of the laws and subjected him to cruel and unusual punishment.

10      92.    As a direct and proximate result of the wrongful, intentional, and malicious

11  acts and omissions of these defendants, Plaintiffs' decedent, Jacorey Shaw, suffered

12  great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, grief,

13  shock, humiliation, indignity, embarrassment, and apprehension prior to his death, all to

14  his damage in a sum to be determined at trial.

15      93.    Plaintiffs are informed, believe, and thereupon allege, that in

16  unreasonably causing the death of Plaintiffs' decedent as described herein,

17  SUPERVISORY DEFENDANTS ADAM CHRISTIANSON, BILL POOLEY, SUNG-

18  OOK BAIK, M.D.,  H.B. ANGELA, PATRICIA QUINN, JERRY LINDSEY, and DOES

19  1-5 acted willfully, maliciously, knowingly, with reckless disregard and callous

20  indifference to the known consequences of their acts and omissions, and purposefully

21  with the intent to deprive Plaintiffs' decedent of his federally protected rights and

22  privileges, and did in fact violate the aforementioned rights and privileges, thereby

23  warranting punitive and exemplary damages against the individual defendant in an

24  amount to be proven at trial.

25      94.    Plaintiffs are entitled to and hereby demands costs, attorneys' fees, and

26  expenses pursuant to 42 U.S.C. § 1988.

27  / / /

28  / / /

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010.
(323)435-8205

30

## FOR THE FOURTH CAUSE OF ACTION

**(By PLAINTIFFS HOPE MCGEE and PAUL SHAW Against THE COUNTY OF TUOLOMNE And THE COUNTY OF STANISLAUS, Municipal Liability Based on the Unconstitutional Failure to Train)**

95.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint.

96.    As set forth herein, the INDIVIDUAL DEFENDANTS, while acting under color of law, violated the rights, privileges, and/or immunities secured to Jacorey Shaw by the Constitution of the United States, the provisions of which include, but are not limited to, the right to equal protection of laws and the right to be free from cruel and unusual punishments, as guaranteed by the Fourteenth, Eighth, and Fifth Amendments to the United States Constitution, among other constitutional provisions.

97.    As thoroughly described herein, prior to September 6, 2018, ALL INDIVIDUAL DEFENDANTS, and each of them, had knowledge of the deliberate failure among the SCC supervisory staff members to deny SCC inmates safety protocols aimed at the prevention of heat related injuries and illnesses in a manner that violated the civil rights of SCC inmates by denying them the equal protection of the laws, as described above, and/or had direct knowledge of the actual, express, and/or implied agreement among ALL INDIVIDUAL DEFENDANTS to falsify, distort, and/or cover up the true circumstances surrounding the death of any inmate who may lose his life at the SCC from heat related illnesses, heat related injuries, and/or heat stroke occurring under the supervision of SCC personnel.

98.    In furthering the conspiratorial deprivations of civil rights referenced herein, SUPERVISORY DEFENDANTS ADAM CHRISTIANSON, BILL POOLEY, and SUNG-OOK BAIK, M.D., and DOES 6-10 deliberately failed to train all persons employed by the COUNTY OF TUOLUMNE and the COUNTY OF STANISLAUS as to how to properly investigate the circumstances surrounding the in-custody deaths at the SCC, as well as how to objectively investigate and conduct autopsies, and certify death

THE COCHRAN FIRM CALIFORNIA
4929 Wilshire Bl.
Suite 1010.
(323)435-8205

certificates, in a scientifically neutral and unbiased manner, without having a predetermined cause of death designed to absolve government officials of liability as the primary factor controlling and directing every aspect of the investigation of events, performance of autopsies, and certification of death certificates.

99.   As a direct and proximate result of the wrongful, intentional, and malicious acts and omissions of these defendants, Plaintiffs' decedent, Jacorey Shaw, suffered civil rights violations prior to his death, and suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, grief, shock, humiliation, indignity, embarrassment, and apprehension prior to his death, in a sum to be determined at trial.

100.   Plaintiffs are entitled to and hereby demands costs, attorneys' fees, and expenses pursuant to 42 U.S.C. § 1988.

**FOR THE FIFTH CAUSE OF ACTION**

**(By PLAINTIFFS HOPE MCGEE and PAUL SHAW Against ALL INDIVIDUAL DEFENDANTS and DOES 1-10 for Violations of Civil Rights  [42 U.S.C. § 1983])(Based on Substantive Due Process Violations)**

101.   Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

102.   This cause of action is set forth herein to redress the deprivation, under color of statute, ordinance, regulation, policy, custom, practice, and/or usage, of rights, privileges, and/or immunities secured to Plaintiffs Jacorey Shaw, by the Fourteenth Amendment to the Constitution of the United States, including, but not limited to, the right to be free from state actions that would deprive Plaintiffs and their birth son of life, liberty, or property in such a manner as to constitute and unreasonable interference into their familial relationship, and in a manner that shock the conscience,

103.   At all times mentioned herein, the INDIVIDUAL DEFENDANTS, and each of them, acted under color and pretense of law, and under color of the statutes, ordinances, regulations, policies, practices, customs, and/or usages of the State of

THE COCHRAN FIRM CALIFORNIA 4929 Wilshire Bl. Suite 1010 (323)435-8205

California, the CDCR, and the Sierra Conservation Center. In so doing, the INDIVIDUAL DEFENDANTS deprived Plaintiffs' decedent, Jacorey Shaw, of the rights, privileges, and/or immunities secured to him by the Constitution of the United States and the laws of the United States, including, but not limited to, the Eighth Amendment's right to be free from cruel and unusual punishment, and the right to equal protection of the laws, as guaranteed by the Fourteenth and Fifth Amendments to the United States Constitution.

104.   Plaintiffs are informed, believe, and thereupon allege, that in unreasonably causing the death of Plaintiffs' decedent as described herein, the INDIVIDUAL DEFENDANTS, despite having deliberative opportunities to consider alterative courses of action, acted willfully, maliciously, knowingly, with reckless disregard and callous indifference to the known consequences of their acts and omissions, and purposefully with the intent to deprive Plaintiffs' decedent of his federally protected rights and privileges in a manner that shocks the conscience, and did in fact violate the aforementioned rights and privileges, thereby warranting punitive and exemplary damages against the individual defendant in an amount to be proven at trial.

105.   Plaintiffs are entitled to and hereby demands costs, attorneys' fees, and expenses pursuant to 42 U.S.C. § 1988.

**FOR THE SIXTH CAUSE OF ACTION**

**(By PLAINTIFFS HOPE MCGEE and PAUL SHAW,  as Successors in Interest to Jacorey Shaw, deceased, Against ALL INDIVIDUAL DEFENDANTS and DOES 1-10 for Violations of Civil Rights [42 U.S.C. § 1983])(Based on Unconstitutional Denial of Medical Care)**

106.   Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint.

107.   This cause of action is set forth herein to redress the deprivation, under color of statute, ordinance, regulation, policy, custom, practice, and/or usage, of rights, privileges, and/or immunities secured to Plaintiffs' decedent, Jacorey Shaw, by the

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

1 Eighth Amendment to the Constitution of the United States, including, but not limited to,

2 the right to be free from cruel and unusual punishments.

3     108.   During the course of the PFT, which occurred during the daylight hours on

4 an extremely hot day, Jacorey Shaw was exhibiting the obvious signs of a medical

5 emergency, which included, but were not limited to, the objective symptoms of

6 dehydration, extreme fatigue, heat exhaustion, and other related conditions indicating

7 that Jacorey Shaw was suffering from a severe and life threatening medical emergency

8 prior to his collapse at 11:08 a.m. on September 6, 2018. The fact that Mr. Shaw was

9 suffering from a severe and life threatening medical emergency was or should have been

10 apparent to the INDIVIDUAL DEFENDANTS, and/or those who conspired with a

11 common plan and purpose to the INDIVIDUAL DEFENDANTS, and should have been

12 apparent to reasonably well trained persons in position(s) similarly situated to

13 INDIVIDUAL DEFENDANTS H.B. ANGELA, PATRICIA QUINN, JERRY

14 LINDSEY, TIMOTHY MCCARTHY,___[NAME REDACTED]____, and DOES 1-5, and

15 those INDIVIDUAL DEFENDANTS who conspired with these defendants with a

16 common plan and purpose. At all times relevant to the acts and omissions herein alleged,

17 Jacorey Shaw was in custody, was under the exclusive care and control of The CDCR

18 and the SCC, and had a special relationship to the employees of the these defendants,

19 including H.B. ANGELA, PATRICIA QUINN, JERRY LINDSEY, TIMOTHY

20 MCCARTHY, ___[NAME REDACTED]____, and DOES 1-5 concerning the care and control

21 of all aspects of his physical health and well being.

22     109.   As a direct and proximate result of the wrongful, intentional, and malicious

23 acts and omissions of these defendants, Plaintiffs' decedent, Jacorey Shaw, suffered civil

24 rights violations prior to his death, and suffered great mental and physical pain,

25 suffering, anguish, fright, nervousness, anxiety, grief, shock, humiliation, indignity,

26 embarrassment, and apprehension prior to his death, in a sum to be determined at trial.

27     110.   Plaintiffs are entitled to and hereby demands costs, attorneys' fees, and

28 expenses pursuant to 42 U.S.C. § 1988.

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

## **FOR THE SEVENTH CAUSE OF ACTION**

**(By PLAINTIFFS HOPE MCGEE and PAUL SHAW, As Successors in Interest to Jacorey Shaw, deceased, Against ALL INDIVIDUAL DEFENDANTS for Violations of Civil Rights [42 U.S.C. § 1983])(Based on Unconstitutional Failure to Protect)**

111.   Plaintiffs restates and incorporate by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

112.   This cause of action is set forth herein to redress the deprivation, under color of statute, ordinance, regulation, policy, custom, practice, and/or usage, of rights, privileges, and/or immunities secured to Plaintiffs and Plaintiffs' decedent, Jacorey Shaw, by the Eighth Amendment to the Constitution of the United States, including, but not limited to, the right to be free from cruel and unusual punishments, and the right to the equal protection of laws, as guaranteed by the Fourteenth and Fifth Amendments to the Constitution of the United States.

113.   At all times relevant to the acts and omissions herein alleged, the INDIVIDUAL DEFENDANTS, and each of them, at all times acted under color of law, and in the course and scope of their employment with their respective employers, including the CDCR, SCC, COUNTY OF TUOLUMNE, and COUNTY OF STANISLAUS.

114.   Based on the above alleged conduct, ALL INDIVIDUAL DEFENDANTS knew, or should have known, or conspired with a common mind and purpose with INDIVIDUAL DEFENDANTS who knew, or should have known, that prior to his collapse at 11:08 a.m. on September 6, 2018, that Jacorey Shaw faced a serious medical need, and knowingly disregarded this medical need by failing to take reasonable measures to address it, proximately causing significant pain and suffering, and death, to Jacorey Shaw, in violation of his right to be free from cruel and unusual punishment, and his right to the equal protection of laws, as described herein.

115.   As a direct and proximate result of the wrongful, intentional, and malicious acts and omissions of the individual defendant, Plaintiffs' decedent, JACOREY SHAW,

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, grief, shock, humiliation, indignity, embarrassment, and apprehension prior to his death, all to his damage in a sum to be determined at trial.

116.   Plaintiffs are entitled to and hereby demands costs, attorneys' fees, and expenses pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1.   For general and special damages in an amount according to proof at trial;

2.   For past and future loss of wages and/or earnings and/or earning capacity according to proof at trial;

3.   For costs of suit incurred herein;

4.   For attorneys' fees incurred herein, as provided by law;

5.   For punitive damages against the individual Defendants in their individual capacities in an amount according to proof at trial; and

6.   For such other and further relief as the Court deems just and proper.

## <u>**JURY DEMAND**</u>

Plaintiff hereby demands that a jury be impaneled for the trial of this matter.

DATED: April 21, 2021

Respectfully submitted,

**THE COCHRAN FIRM CALIFORNIA**

By: /s/ Brian T. Dunn

BRIAN T. DUNN

Attorneys for Plaintiffs

THE
COCHRAN
FIRM
CALIFORNIA
4929 Wilshire Bl.
Suite 1010
(323)435-8205

36

## DECLARATION OF HOPE MAGEE

1. The decedent's name who is the subject of this action for wrongful death is JACOREY SHAW.

2. On September 6, 2018, JACOREY SHAW lost his life as a result of civil rights violations contributing to his death at the Sierra Conservation Center, located at 5100 O'Byrnes Ferry Road in Jamestown, California.

3. No proceeding is now pending in California for the administration of the decedent's estate.

4. I am the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) with respect to the decedent's interest in the within action.

5. No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action.

 I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: September 11, 2019

            HOPE MAGEE, declarant

## DECLARATION OF PAUL SHAW

1.     The decedent's name who is the subject of this action for wrongful death is JACOREY SHAW.

2.     On September 6, 2018, JACOREY SHAW lost his life as a result of civil rights violations contributing to his death at the Sierra Conservation Center, located at 5100 O'Byrnes Ferry Road in Jamestown, California.

3.     No proceeding is now pending in California for the administration of the decedent's estate.

4.     I am the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) with respect to the decedent's interest in the within action.

5.     No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:   September 11, 2019

_____
PAUL SHAW, declarant

# CERTIFICATION OF VITAL RECORD

OFFICE OF ASSESSOR - RECORDER

# COUNTY OF TUOLUMNE

### SONORA, CALIFORNIA

**CERTIFICATE OF DEATH**      3201855000468

| Field | Value |
|---|---|
| NAME OF DECEDENT—FIRST | JACOREY |
| MIDDLE | MICHAEL |
| LAST | SHAW |
| ALSO KNOWN AS | JACOREY MICHAEL MARCEL SHAW |
| DATE OF BIRTH | 12/12/1991 |
| AGE | 26 |
| SEX | M |
| BIRTH STATE/FOREIGN COUNTRY | CA |
| SOCIAL SECURITY NUMBER | 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 |
| EVER IN U.S. ARMED FORCES? | NO |
| MARITAL STATUS | NEVER MARRIED |
| DATE OF DEATH | 09/06/2018 |
| HOUR | 1222 EST |
| EDUCATION | 11 |
| HISPANIC ORIGIN | NO |
| RACE | BLACK |
| USUAL OCCUPATION | NEVER WORKED |

| Field | Value |
|---|---|
| DECEDENT'S RESIDENCE – STREET | 6518 TEASDALE ST |
| CITY | LANCASTER |
| COUNTY/PROVINCE | LOS ANGELES |
| ZIP CODE | 93535 |
| YEARS IN COUNTY | 26 |
| STATE OR FOREIGN COUNTRY | CA |
| INFORMANT'S NAME, RELATIONSHIP | HOPE MAGEE-SHAW, MOTHER |
| MAILING ADDRESS | 6518 TEASDALE ST, LANCASTER, CA 93535 |

| Field | Value |
|---|---|
| NAME OF FATHER/PARENT – FIRST | PAUL |
| MIDDLE | |
| LAST | SHAW III |
| BIRTH STATE | CA |
| NAME OF MOTHER/PARENT – FIRST | HOPE |
| MIDDLE | |
| LAST | MAGEE |
| BIRTH STATE | CA |

| Field | Value |
|---|---|
| DISPOSITION DATE | 09/21/2018 |
| PLACE OF FINAL DISPOSITION | INGLEWOOD PARK CEMETERY, 720 E. FLORENCE AVE, INGLEWOOD, CA 90301 |
| TYPE OF DISPOSITION | BU |
| SIGNATURE OF EMBALMER | WILLIE SOLOMON |
| LICENSE NUMBER | EMB5677 |
| NAME OF FUNERAL ESTABLISHMENT | SOLOMONS MORTUARY |
| LICENSE NUMBER | FD1428 |
| SIGNATURE OF LOCAL REGISTRAR | KEENAN S WHITMAN |
| DATE | 09/21/2018 |

| Field | Value |
|---|---|
| PLACE OF DEATH | SIERRA CONSERVATION CENTER |
| FACILITY ADDRESS | 5100 OBYRNES FERRY ROAD |
| COUNTY | TUOLUMNE |
| CITY | RURAL JAMESTOWN |
| IMMEDIATE CAUSE | PENDING |

| CORONER USE ONLY |
|---|
| SIGNATURE OF CORONER / DEPUTY CORONER: OLIVER IMLACH |
| DATE: 09/21/2018 |
| TYPE NAME, TITLE OF CORONER / DEPUTY CORONER: OLIVER IMLACH, DEPUTY CORONER |



This is a true and exact reproduction of the document officially registered and placed on file in the office of the Tuolumne County Assessor-Recorder.

KEENAN WHITMAN
TUOLUMNE COUNTY ASSESSOR-RECORDER    DATE ISSUED   **4/1/2019**

*000133741*

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the Assessor-Recorder.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



### CERTIFICATION OF VITAL RECORD

OFFICE OF ASSESSOR - RECORDER

# COUNTY OF TUOLUMNE

SONORA, CALIFORNIA

**PHYSICIAN/CORONER'S AMENDMENT**

NO ERASURES, WHITEOUTS, PHOTOCOPIES, OR ALTERATIONS

| 3052018191987 | 3201855000468 |
|---|---|
| STATE FILE NUMBER | LOCAL REGISTRATION NUMBER |

1.1

☐ BIRTH ☒ DEATH ☐ FETAL DEATH

TYPE OR PRINT CLEARLY IN BLACK INK ONLY – THIS AMENDMENT BECOMES AN ACTUAL PART OF THE OFFICIAL RECORD

**PART I — INFORMATION TO LOCATE RECORD**

| | 1A. NAME—FIRST | 1B. MIDDLE | 1C. LAST | 2. SEX |
|---|---|---|---|---|
| INFORMATION AS IT APPEARS ON ORIGINAL RECORD | JACOREY | MICHAEL | SHAW | M |
| | 3. DATE OF EVENT—MM/DD/CCYY | 4. CITY OF EVENT | 5. COUNTY OF EVENT | |
| | 09/06/2018 | RURAL JAMESTOWN | TUOLUMNE | |

**PART II — STATEMENT OF CORRECTIONS**

| 6. CERTIFICATE ITEM NUMBER | 7. INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 8. INFORMATION AS IT SHOULD APPEAR |
|---|---|---|
| 107A | PENDING | FATAL CARDIAC ARRHYTHMIA |
| 107AT | - | MINS |
| 107B | - | ARTERIOSCLEROTIC CORONARY ARTERY |
| 107BT | | YRS |
| 112 | | OBESITY |
| 113 | | NONE |
| 119 | PENDING INVESTIGATION | NATURAL |

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

| DECLARATION OF CERTIFYING PHYSICIAN OR CORONER | 9. SIGNATURE OF CERTIFYING PHYSICIAN OR CORONER | 10. DATE SIGNED—MM/DD/CCYY | 11. TYPED OR PRINTED NAME AND TITLE/DEGREE OF CERTIFIER |
|---|---|---|---|
| | RODNEY D HOBBS | 01/29/2019 | DEPUTY CORONER |
| | 12. ADDRESS—STREET and NUMBER | 13. CITY | 14. STATE / 15. ZIP CODE |
| | 28 NORTH LOWER SUNSET DRIVE | SONORA | CA / 95370 |

| STATE/LOCAL REGISTRAR USE ONLY | 16. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR | 17. DATE ACCEPTED FOR REGISTRATION—MM/DD/CCYY |
|---|---|---|
| | STATE REGISTRAR - OFFICE OF VITAL RECORDS | 01/29/2019 |

STATE OF CALIFORNIA, DEPARTMENT OF PUBLIC HEALTH, OFFICE OF VITAL RECORDS — FORM VS 24An (REV. 1/04)

1.1

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Tuolumne County Assessor-Recorder.



KAENAN WHITMAN
TUOLUMNE COUNTY ASSESSOR-RECORDER        DATE ISSUED  4/1/2019

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the Assessor-Recorder.
PRINTED ON 01 040

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

\* 0 0 0 1 3 3 7 4 0 \*

