1

2

**UNITED STATES DISTRICT COURT**

3

**EASTERN DISTRICT OF CALIFORNIA**

4

5

6

7

8

9

10

11

12

13

14

15

HOPE MAGEE, individually and as
Successor in Interest to JACOREY
SHAW, deceased, et al.,

        Plaintiff,

    vs.

ADAM CHRISTIANSON, et al.,

        Defendants.

CASE NO. 1:21-cv-00670-AWI-BAM

**ORDER GRANTING MOTION TO
DISMISS BY TUOLUMNE COUNTY,
RODNEY HOBBS, OLIVER IMLACH
AND BILL POOLEY**

**ORDER TO SHOW CAUSE**

(Doc. No. 19)

16

    This action involves federal civil rights claims against Tuolumne County, Stanislaus

17

County and eleven individual defendants (the "Individual Defendants") in connection with an

18

inmate death. Defendants Tuolumne County, Rodney Hobbs, Oliver Imlach and Bill Pooley[1] bring

19

a motion to dismiss all seven of the claims against them in First Amended Complaint ("FAC").

20

Doc. No. 19. The motion has been fully briefed and deemed suitable for decision without oral

21

argument pursuant to Local Rule 230(g). For the reasons set forth below, the motion will be

22

granted.

23

**BACKGROUND[2]**

24

    Jacorey Shaw died at 12:22 p.m. on September 6, 2018, at the age of 26, while incarcerated

25

at the Sierra Conservation Center ("SCC"), a correctional facility operated by the California

26

27

28

---

[1] Hobbs, Imlach and Pooley are collectively referred to herein as the "Tuolumne Individual Defendants." Hobbs,
Imlach, Pooley and Tuolumne County are collectively referred to herein as the "Tuolumne Defendants."
[2] This section summarizes allegations set forth in the FAC. See Doc. No. 7.

Department of Corrections and Rehabilitation ("CDCR"). Doc. No. 7 ¶ 24. He had been chosen to participate in a selective firefighter training program and died during a rigorous fitness test (the "Physical Fitness Test" or "PFT") under the supervision of SCC employee Dennis Jordan-Curasi. Id. ¶ 25. The ambient temperature during the PFT got as high as 90º Fahrenheit, and Shaw collapsed at 11:08 a.m., after approximately two-and-a-half hours of strenuous physical activity. Id. ¶¶ 26-28.

Prior to Shaw's death on September 6, 2018, Hunter Anglea, Jerry Lindsey[3] and Patricia Quinn (three of five Individual Defendants in the employ of the CDCR)[4] "failed to implement any … protocols to address the predictable and recurring danger of heat related illnesses among SCC inmates." Doc. No. 7 at 8:27-9:3. In addition, the eleven Individual Defendants formed an "express and/or implied" agreement "to falsify, distort, and/or cover up the true circumstances surrounding the death of any inmate at the SCC and/or in the PFT that died as a result of a heat related illness or injury occurring on the premises of the SCC and under the supervision of the CDCR personnel." Id. ¶ 35. Shaw had exhibited no serious health problems in the 26 years prior to his death and "was one of the select inmates at the SCC who were deemed physically fit for the vigorous physical training" involved in the firefighter training program. Id. ¶ 24.

Shaw "did not receive the most minimal levels of hydration necessary to sustain the arduous physical activities he was required to endure" to pass the PFT. Doc. No. 7 ¶ 33. Further, SCC personnel—including Jordan-Curasi—failed to respond to "clear signs" that Shaw was in distress due to heat and dehydration, and Bertolotti (a registered nurse in the employ of the SCC) "failed to administer the most basic levels of emergency treatment" to Shaw after he collapsed. Id. ¶ 34.

Anglea, Lindsey, McCarthy and Quinn failed to conduct any investigation of Shaw's

---

[3] The FAC uses "Angela" instead of "Anglea" and sometimes spells "Lindsey" as "Lindsay." The Court understands "Anglea" and "Lindsey" to be the correct spellings. See Doc. Nos. 44-45.

[4] The other Individual Defendants employed by the CDCR were Denny Bertolotti and Timothy McCarthy. The five Individual Defendants employed by the CDCR are sometimes referred to herein as the "CDCR Defendants." The other three Individual Defendants are Adam Christianson, Sung-Ook Baik and Frank Leyva. See Doc. No. 7 ¶¶ 5, 7-8. Christianson, Baik and Leyva were employed by Stanislaus County during the period relevant to this action. They are referred to collectively herein as the "Stanislaus Individual Defendants" and, together with Stanislaus County, as the "Stanislaus Defendants."

physical condition prior to his collapse on September 6, 2018, Doc. No. 7 ¶ 35, and "[s]ometime after September 6, 2018, all videotaped footage of events that occurred in the SCC training area" prior to Shaw's collapse "went missing." Id. ¶ 36. Plaintiffs allege on information and belief that Anglea, Quinn and/or Lindsey "deliberately ordered" the destruction of video footage of the SCC testing area from 8:00 a.m. to 11:00 a.m. on September 6, 2018 to conceal facts surrounding Shaw's death. Id. ¶ 36. Further, Plaintiffs allege that Anglea, Quinn and/or Lindsey ordered the destruction of this evidence pursuant to their agreement with the other Individual Defendants "to falsify, distort and/or cover up the true circumstances" surrounding heat-related deaths at the SCC and in connection with the PFT. Id.

According to the FAC, Anglea, Quinn and Lindsey also falsified records relating to the temperature at the SCC testing area at the time of the PFT. Doc. No. 7 ¶ 38. Similarly, McCarthy provided false information to the California Division of Occupational Safety and Health ("Cal/OSHA") regarding temperatures at the SCC testing area during the PFT and the 14-day period prior to September 5, 2018, id. ¶ 39, and falsely referenced a "possible heart condition" as a cause of Shaw's death in documents prepared for Cal/OSHA, with no reference to any possibility of heat-related illness or injury. Id. ¶ 42. In doing so, McCarthy acted on information provided to him by Hobbs (of the Tuolumne County Sheriff-Coroner Office) and Baik (of the Stanislaus County Sheriff-Coroner Office). Id.

Pursuant to a contractual arrangement between Tuolumne County and Stanislaus County, Shaw's autopsy was performed by Stanislaus County (specifically, Baik), even though Shaw's death occurred in Tuolumne County. Doc. No. 7 ¶ 46. Hobbs provided a report to the Stanislaus County Sheriff-Coroner Office falsely stating that Shaw "appeared physically fit and was doing physical training … when he collapsed." Id. ¶ 45. Further, the "opinions and conclusions" set forth in Baik's autopsy report—which failed to meet applicable professional standards—are "completely lacking in any scientific foundation," due, in part, to the "numerous deficiencies and glaring omissions surrounding [] Shaw's death investigation." Id. ¶ 46. Most notably, Baik improperly attributed Shaw's death to a pre-existing heart condition and failed to give adequate consideration to heat-related illness or injury as the cause of death. Id. ¶¶ 47-62. In addition, Baik

and his Stanislaus County colleague, Leyva, caused (or allowed) Shaw's body to decompose in a 24-hour period following the autopsy in a "deliberate effort" to prevent further examination of Shaw's remains. Id.

The autopsy was completed and signed by Baik on October 2, 2018, but the Tuolumne County Office of the Assessor-Recorder did not issue Shaw's death certificate until April 1, 2019. Doc. No. 7 ¶ 65. Further, the death certificate was not signed by Pooley, who was the Tuolumne County Sheriff-Coroner at the time. It was instead signed, at Pooley's direction, by Hobbs and Imlach, who were originally hired by Tuolumne County as "peace officers" but who later became "Deputy Coroners" even though neither had formal medical training. Id. ¶ 66. Hobbs and Imlach received compensation for the work they performed for Pooley. Id. ¶ 67.

The death certificate was "fraudulent" in that it stated that Shaw's death was "natural" and that it was associated with "fatal cardiac arrhythmia," an "arteriosclerotic coronary artery" and "obesity." Doc. No. 7 ¶ 68-69. All Individual Defendants knew Shaw's death was caused by "the combined effects of heat exhaustion, heat related illnesses and/or heat stroke" and that it was not due to heart disease or any other pre-existing condition. Id.

Shaw's parents—Hope Magee and Paul Shaw ("Plaintiffs")—filed this action on April 22, 2021. Doc. No. 1. The FAC sets forth claims against Tuolumne County, Stanislaus County and the Individual Defendants for: (1) conspiracy to violate civil rights under 42 U.S.C. § 1985; (2) failure to prevent conspiracy to violate civil rights under 42 U.S.C. § 1986; and (3) inadequate supervision, failure to train, substantive due process violations, denial of medical care and failure to protect under 42 U.S.C. § 1983. See Doc. No. 7.

The instant motion to dismiss was brought by the Tuolumne Defendants (Tuolumne County, Hobbs, Imlach and Pooley). See Doc. No. 19. The Stanislaus Defendants (Stanislaus County, Christianson, Baik and Leyva) answered the FAC on August 23, 2021, denying all but a few allegations. Doc. No. 20. The CDCR Defendants (Anglea, Lindsey, McCarthy, Quinn and Bertolotti) were terminated as defendants on January 26, 2022 following settlement. Doc. Nos. 42-45.

//

4

1 **LEGAL FRAMEWORK**

2    Under Federal Rule of Civil Procedure 12(b)(6), a cause of action may be dismissed where

3 a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

4 Dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

5 absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar,

6 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116,

7 1121–22 (9th Cir. 2008).

8    In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact

9 are taken as true and construed in the light most favorable to the non-moving party. Kwan v.

10 SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more

11 than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will

12 not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg.

13 Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true

14 allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial

15 notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

16 inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254

17 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual

18 matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at

19 678; Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). "A claim has facial plausibility

20 when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

21 the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc.,

22 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" is less than probability but "more than a sheer

23 possibility," and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal,

24 556 U.S. at 678; Somers, 729 F.3d at 960.

25    "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the

26 running of the statute [of limitations] is apparent on the face of the complaint.' " United States ex

27 rel. Air Control Techs., Inc. v. Pre Con Indus., Inc., 720 F.3d 1174, 1178 (9th Cir. 2013) (quoting

28 Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010))

1   (alteration in original); see also, Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207 (9th

2   Cir. 1995) (holding that a "complaint cannot be dismissed unless it appears beyond doubt that the

3   plaintiff can prove no set of facts that would establish the timeliness of the claim").

4          If a motion to dismiss is granted, "[the] district court should grant leave to amend even if

5   no request to amend the pleading was made ...." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir.

6   2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff

7   has failed to cure deficiencies despite repeated opportunities to do so. Garmon v. County of Los

8   Angeles, 828 F.3d 837, 842 (9th Cir. 2016).

9                                         **DISCUSSION**

10          The Tuolumne Defendants argue that Plaintiffs have failed to state a claim; that Plaintiffs'

11   claims are time-barred; and that Plaintiffs' claims are barred by the doctrine of claim splitting. The

12   Court addresses these issues below to the extent warranted.

13   **A.    Failure to State a Claim**

14          **1.   First Cause of Action: Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1985**

15          Plaintiffs' First Cause of Action is brought against all eleven Individual Defendants under

16   42 U.S.C. § 1985 for conspiracy to violate civil rights. See Doc. No. 7 at 25:1-9. Plaintiffs allege

17   that Anglea, Quinn and Lindsey (three of the CDCR Defendants) denied "inmates at the SCC" and

18   "inmates involved in [Shaw's] PFT class" equal protection by deliberately failing "to implement

19   any safety measures aimed at protecting the health and safety" of inmates involved in PFT testing

20   on September 6, 2018; that Shaw died from dehydration and heat exposure as a result; and that

21   "pursuant to an express/or implied agreement which predated September 6, 2018," each of the

22   Individual Defendants (including the Individual Tuolumne Defendants) "made possible" these

23   denials of equal protection "by ensuring there would be no accountability" and "conspiring to

24   falsely ascribe [] Shaw's death to a preexisting heart disease ...." Id. at 25:24-27:5.

25          While not specified in the FAC, this claim appears to be brought under § 1985(3), which,

26   in pertinent part, prohibits conspiracy to deprive "any person or class of persons of the equal

27   protection of the laws." 42 U.S.C § 1985(3).

28          Section 1985(3) was enacted by the Reconstruction Congress to protect individuals—

primarily African-Americans—from conspiracies to deprive them of legally protected rights. See Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992). To prevail on a cause of action under § 1985(3), a plaintiff must allege and prove four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Id. (citing United Brotherhood of Carpenters and Joiners of America v. Scott, 463 U.S. 825, 828–29 (1983)).

The Supreme Court has "made it clear" that § 1985(3) is " 'not intended to apply to all tortious, conspiratorial interferences with the rights of others,' but only to those which were founded upon 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.' " Briley v. California, 564 F.2d 849, 859 (9th Cir. 1977) (quoting Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971)); see also, Sever, 978 F.2d at 1536 (noting "a background rule that 42 U.S.C. § 1985(3) is not to be construed as a general federal tort law" (quoted source and internal quotation marks omitted)). Further, the Supreme Court has "displayed a restrictive approach to the ambit of section 1985(3) coverage," Trerice v. Pedersen, 769 F.2d 1398, 1403 (9th Cir. 1985), and called it "a close question whether § 1985(3)" was intended to reach any "class-based animus other than animus against [African-Americans] and those who championed their cause, most notably Republicans …." United Brotherhood, 463 U.S. at 836. The rule in the Ninth Circuit "is that section 1985(3) is extended beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." Sever, 978 F.2d at 1536 (quoted source and internal quotation marks omitted). Specifically, the Ninth Circuit requires "either that [] courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." Id. (quoted source and internal quotation marks omitted).

Plaintiffs fail to state a § 1985(3) claim for two reasons.

First, Plaintiffs fail to allege facts to support the allegation that defendants conspired

1   together. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988) ("A

2   mere allegation of conspiracy without factual specificity is insufficient." (citations omitted)).

3         The FAC states that the Individual Tuolumne Defendants—Hobbs, Imlach and Pooley—

4   engaged in an "express and/or implied agreement" prior to September 6, 2018 to "falsify, distort,

5   and/or cover up the true circumstances surrounding the death of any inmate at the SCC and/or in

6   the PFT that died as a result of a heat related illness or injury occurring on the premises of the

7   SCC and under the supervision of CDCR personnel." Doc. No. 7 at 10:24-11:2. Further, the FAC

8   states that the "unconstitutional acts and omissions" that culminated in Shaw's September 6, 2018

9   death "were made possible" because CDCR Defendants Anglea, Quinn and Lindsey knew that the

10  other Individual Defendants "would protect them and cover up" their wrongdoing. Id. at 27:9-15.

11  There are no factual allegations at all, however, as to how the agreement among the Individual

12  Defendants was formed, and the handful of factual allegations in the FAC regarding Hobbs,

13  Imlach and Pooley pertain solely to events that transpired after Shaw's death and did not involve

14  the CDCR Defendants. For example, the FAC states that Hobbs falsely reported that Shaw

15  "appeared physically fit and was doing physical training on September 6, 2018 when he

16  collapsed," id. at 16:6-7; that Imlach falsely signed a death certificate indicating that Shaw died of

17  "natural" causes involving obesity and cardiac arrhythmia, id. at 22:21-23:2; and that Pooley

18  failed to train employees how to investigate inmate deaths, conduct autopsies and issue death

19  certificates in a "neutral" manner. Id. at 31:23-32:4. The Court cannot infer from such allegations

20  the "meeting of the minds" among Imlach, Hobbs, Pooley and other Individual Defendants

21  required to state a § 1985(3) claim. See Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th

22  Cir. 1999) ("To prove a civil conspiracy, the plaintiff must show that the conspiring parties

23  reached a unity of purpose or a common design and understanding, or a meeting of the minds in an

24  unlawful arrangement." (quoted source and internal quotation marks omitted)); see also, Cardenas

25  v. Cnty. of Tehama, 476 F. Supp. 3d 1055, 1069–70 (E.D. Cal. 2020) (dismissing § 1985(3) claim

26  where "[p]laintiffs [made] only the bare assertion that Defendants conspired with each other").

27         Second, Plaintiffs make no attempt to show a governmental determination—by courts or

28  Congress—that prisoners merit special protection with respect to federal civil rights, and courts in

8

the Ninth Circuit have consistently found that prisoners are not a protected class for purposes of §
1985(3). See, e.g., Taylor v. Delatoore, 281 F.3d 844, 849 (9th Cir. 2002) ("indigent prisoners are
not a suspect class"); Trerice, 769 F.2d at 1402–03 (finding that "military prisoners" are not a
protected class for purposes of § 1985(3)); see also, Rivera v. Zewart, 2017 WL 2651982, at *6
(N.D. Cal. June 20, 2017) ("the 'class' of state prisoners is not protected under § 1985(3)"); Nakao
v. Rushen, 542 F. Supp. 856, 859 (N.D. Cal. 1982) (class of "state prisoners" not protected under
§ 1985(3) because there has been no congressional determination that it requires special federal
civil rights assistance and it is not comparable to classes based on race, national origin or sex).
Thus, as they concede, Plaintiffs cannot allege a § 1985(3) claim based on a class of "inmates at
the SCC." See Doc. No. 26 at 6:19-25.

   Similarly, Plaintiffs concede they have not shown that "inmates involved in [Shaw's]
PFT" constitute a class eligible for special protection or subject to "invidiously discriminatory
animus," see Doc. No. 26 at 6:22-25, and the FAC does not allege—or even allow for an
inference—that the conduct at issue here was motivated by race. The FAC states that "inmates at
the SCC" were denied equal protection as compared to "similarly situated inmates at other CDCR
facilities" in hot areas; that "inmates involved in [] Shaw's PFT class" were denied equal
protection as compared to "similarly situated inmates in other PFT classes within the SCC"; and
that Anglea, Quinn and Lindsey "deliberately failed to implement *any safety measures* aimed at
protecting the health and safety of inmates" who participated in Shaw's September 6, 2018 PFT.
Doc. No. 7 at 25:24-27 (emphasis added). Such allegations, pertaining to all SCC inmates and all
participants in Shaw's PFT class without regard to race, preclude an inference of race-based
animus. See Solomon v. Sheldon, 2020 WL 996677, at *5 (E.D. Cal. Mar. 2, 2020), report and
recommendation adopted, 2020 WL 1937769 (E.D. Cal. Apr. 22, 2020) (finding plaintiff's
allegations failed to state a claim for violation of § 1985(3) where plaintiff failed to allege and the
court could not plausibly infer racial discrimination).

   For the foregoing reasons, Plaintiffs' § 1985(3) claim must be dismissed. Further, while
Plaintiffs could conceivably cure their failure to allege a conspiracy, they cannot cure the manifest
lack of a protected class. The First Cause of Action will therefore be dismissed with prejudice.

### 2.   Second Cause of Action: Failure to Prevent Conspiracy Under 42 U.S.C. § 1986

The Second Cause of Action is brought against all Individual Defendants under 42 U.S.C. § 1986 for failure to prevent conspiracy to violate civil rights. Doc. No. 7 at 28:3-7.

Section 1986 provides in relevant part as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented ….

42 U.S.C. § 1986.

Plaintiffs allege that all Individual Defendants "had knowledge of the deliberate failure among the SCC supervisory staff members to deny SCC inmates safety protocols" and that all Individual Defendants had direct knowledge of the agreement among all Individual Defendants "to falsify, distort, and/or cover up the true circumstances surrounding the death of any inmate who may lose his life at the SCC from heat related illnesses …." Doc. No. 7 at 28:16-23. Further, Plaintiffs allege that all Individual Defendants "had the power to prevent or aid in preventing the … conspiracy to violate the civil rights of SCC inmates" yet failed to do so. Id. at 28:24-28.

Section 1986 provides a cause of action for damages for violation of § 1985, I.H. by & through Hunter v. Oakland Sch. for Arts, 234 F. Supp. 3d 987, 994 (N.D. Cal. 2017), and the Ninth Circuit has "adopted the broadly accepted principle that a cause of action is not provided under [] § 1986 absent a valid claim for relief under section 1985." Trerice, 769 F.2d at 1403; see also, Karim-Panahi, 839 F.2d at 626. As set forth above, Plaintiffs have not stated—and cannot state—a claim under § 1985(3). The Second Cause of Action will therefore be dismissed with prejudice.

### 3.   Plaintiffs' Request to "Restyle" Their § 1985 Claim as a § 1983 Claim

Plaintiffs "concede that [the] First Cause of Action may have been erroneously styled under 42. U.S.C. Section 1985, instead of Section 1983" and seek leave to amend the FAC to "allege a conspiracy cause of action under 1983" on the grounds that "all of the components of a conspiracy under Section 1983 have been adequately alleged in the Complaint." Doc. No. 26 at

7:2-5.

The elements of a cause of action for conspiracy under § 1983 are: (1) the existence of an express or implied agreement among the defendants to deprive plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991). Causation is "an implicit requirement" of all civil rights actions. Arnold v. IBM Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). A plaintiff must therefore demonstrate that the defendant's conduct was the actionable cause of the claimed injury. Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008) (citing Arnold, 637 F.2d at 1355).

As the Ninth Circuit observed in *Arnold v. International Business Machines Corp.*, 637 F.2d 1350 (9th Cir. 1981), causation under § 1983 has two components: causation in fact and proximate causation. See id. at 1355 ("The causation requirement of section[ ] 1983 ... is not satisfied by a showing of mere causation in fact.... Rather, the plaintiff [also] must establish proximate or legal causation." (citation omitted)); see also, Harper, 533 F.3d at 1026.  Therefore, a "proper complaint" under § 1983 sets forth "facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff." Hoffman v. Halden, 268 F.2d 280, 295 (9th Cir. 1959), overruled on other grounds by Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962). The requisite causal connection can be established by direct personal participation in a deprivation or by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury. Johnson v. Duffy, 588 F.2d 740, 743–44 (9th Cir. 1978).

The Court cannot agree with Plaintiffs that "all of the components of a conspiracy under Section 1983 have been adequately alleged in the Complaint." First, as set forth above, the FAC does not contain facts showing that Hobbs, Imlach or Pooley "reached an understanding" of any kind among themselves or with other Individual Defendants, let alone an agreement to violate Shaw's constitutional rights (or the constitutional rights of SCC inmates and PFT participants). See Adickes v. S.H. Kress & Co., 398 U.S. 144, 151-52 (1970); see also, Woodrum v. Woodward Co., 866 F.2d 1121, 1126 (9th Cir. 1989). And in any event, the FAC merely states that the alleged

1  conspiracy "made possible" the wrongful conduct of the CDCR Defendants with respect to safety
2  protocols at the SCC, see Doc. No. 7 at 26:23-27:5, and that the CDCR Defendants "would not
3  have undertaken the acts and omissions" that led to Shaw's death  "had they not known that they
4  would be absolved of any accountability for their actions." Even assuming such allegations suffice
5  for "cause in fact," they are insufficient to support an inference that the conspiracy "set[] in
6  motion" acts on the part of SCC personnel that culminated in Shaw's death. See Duffy, 588 F.2d
7  at 743-44 (addressing the "requisite causal connection" for § 1983 liability).

8       In sum, it does not appear to the Court that Plaintiffs have alleged facts sufficient to state a
9  plausible § 1983 conspiracy claim. Given the general contours of the FAC and liberal policies
10 with respect to amendment in federal courts, however, the Court will allow amendment to bring a
11 conspiracy claim under § 1983 if the Court finds, in the analysis to follow, that such a claim would
12 be timely and to the extent such a claim would be distinct from claims already alleged. See Vahora
13 v. Valley Diagnostics Lab'y Inc., 2017 WL 2572440, at *2 (E.D. Cal. June 14, 2017) (recognizing
14 that orders of dismissal can allow for amendment adding new claims).

15       **4.  Third Cause of Action: Supervisory Liability for Civil Rights Violations**

16      Plaintiffs' Third Cause of Action alleges under § 1983 that Pooley—and certain Individual
17 Defendants in supervisory positions with the CDCR and Stanislaus County—conspired to deprive
18 Shaw of, *inter alia*, rights under the Eighth Amendment and Fourteenth Amendment. Doc. No. 7 ¶
19 90.

20      The Tuolumne Defendants argue that the Third Cause of Action should be dismissed
21 because the sole relevant allegations as to Pooley are that, as the Sheriff/Coroner of Tuolumne
22 County, he "deliberately failed to train all person as to how to properly investigate in custody
23 deaths, investigate and conduct autopsies, and certify death certificates" and that he was party to
24 "an actual, express, and/or implied agreement to falsify, distort, and/or cover up the true
25 circumstances surrounding the death of any inmate who may lose his life at the SCC from heat
26 related illnesses ...." Doc. No. 19-1 at 21:21-22:6. Plaintiffs contend, without citing a single
27 factual allegation, that the FAC sufficiently alleges that Pooley (and other Individual Defendants
28 in supervisory roles) "actively deprived, and directed the deprivation of [] Shaw's civil rights."

Doc. No. 26 at 10:4-11.

As Plaintiffs point out, a supervisor can be held liable under § 1983 in his or her individual capacity only if (1) he or she personally participated in the constitutional violation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (a supervisor may be held liable for the constitutional violations of his subordinates only if he "participated in or directed the violations, or knew of the violations and failed to act to prevent them"). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury," Starr v. Baca, 652 F.3d 1202, 1207–08 (9th Cir. 2011) (quoted source, internal punctuation and modifications omitted), but "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

The constitutional violations alleged in the FAC arose from conditions and events at the SCC, including, primarily, the lack of safety protocols and inadequate emergency medical response. The FAC expressly alleges that the CDCR Defendants had exclusive control over Shaw, see Doc. No. 7 at 34:16-18 ("At all times relevant to the acts and omissions herein alleged, Jacorey Shaw … was under the exclusive care and control of the CDCR and the SCC …."), and, as set forth above, the FAC fails to set forth facts showing the existence of a conspiracy that caused—or that was aimed at causing—the constitutional violations that allegedly led to Shaw's death. Since Plaintiffs have failed to connect Pooley (directly or indirectly) to the harms underlying this action, the Third Cause of Action will be dismissed.

### 5. Fourth Cause of Action: Unconstitutional Failure to Train

Plaintiffs' Fourth Cause of Action alleges under § 1983 that Tuolumne County is liable for the constitutional violations at issue here because Pooley failed to provide proper training "as to how to properly investigate the circumstances surrounding [] in-custody deaths at the SCC, as well as how to objectively investigate and conduct autopsies, and certify death certificates, in a

scientifically neutral and unbiased manner …" Doc. No. 7 ¶ 98.

"A municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). To prevail on a § 1983 claim against Tuolumne County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Plaintiffs must show that a Tuolumne County policy was the proximate cause of the § 1983 injury. Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996). As set forth above, Plaintiffs have failed to allege that Pooley violated Shaw's rights (either directly or by way of conspiracy), and there are no factual allegations in the FAC as to a Tuolumne County policy or custom of any kind. The Fourth Cause of Action will therefore be dismissed.

### 6. Fifth Cause of Action: Substantive Due Process Violation

Plaintiffs allege under § 1983 that the Individual Defendants violated their substantive due process rights under the Due Process Clause of the Fourteenth Amendment by depriving them of their son and thereby interfering with their familial relationship in a manner that shocks the conscience. Doc. No. 7 ¶ 102. As set forth above, Plaintiffs have failed to show any direct or indirect role in Shaw's death on the part of the Individual Tuolumne Defendants. Thus, even assuming Shaw's death—and the events leading up to it— implicate Plaintiffs' substantive due process rights, the Fifth Cause of Action fails and will be dismissed.

### 7. Sixth Cause of Action: Unconstitutional Denial of Medical Care

Plaintiffs allege under § 1983 that the Individual Tuolumne Defendants are liable, by way of conspiracy, for the failure on the part of CDCR personnel to provide Shaw with constitutionally required medical care immediately prior to his death on September 6, 2018. Doc. No. 7 ¶ 108.

The Eighth Amendment imposes certain duties on prison officials: (1) to provide humane conditions of confinement; (2) to ensure that inmates receive adequate food, clothing, shelter and medical care; and (3) to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984) (internal quotation marks omitted)). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Specifically, Eighth Amendment principles

1  prohibit prison officials from intentionally denying or delaying access to medical care or

2  intentionally interfering with the treatment once prescribed. Zentmyer v. Kendall County, Illinois,

3  220 F.3d 805, 810 (7th Cir. 2000).

4        As set forth above, the FAC fails to allege that the Individual Tuolumne Defendants were

5  involved in a conspiracy. Further, the FAC expressly alleges that Shaw was "under the exclusive

6  care and control of [t]he CDCR and the SCC" at the time healthcare was required prior to his

7  death. Doc. No. 7 ¶ 108. This precludes liability on the part of the Individual Tuolumne

8  Defendants for conduct relating to the medical care provided to Shaw on September 6, 2018, and

9  the Sixth Cause of Action will therefore be dismissed.

10            **8.   Seventh Cause of Action: Failure to Protect**

11        Plaintiffs allege under § 1983 that the Individual Tuolumne Defendants are liable for

12  disregarding and failing to address Shaw's "serious medical need" prior to his death. Although

13  substantively identical to the Sixth Cause of Action, this claim is styled as a "failure to protect"

14  claim. Again, Plaintiffs fail to allege facts sufficient to support a plausible inference that the

15  Individual Tuolumne Defendants had any causal role in the events of September 6, 2018, by way

16  of conspiracy or otherwise. The Seventh Cause of Action will therefore be dismissed for failure to

17  state a claim.

18  **B.    Timeliness of Plaintiffs' Claims**

19        As set forth above, Plaintiffs have failed to allege facts sufficient to state a claim against

20  any of the Tuolumne Defendants under any of the theories espoused in the FAC. The Court will

21  now address whether Plaintiffs' causes of action are timely.

22            **1.   Last Overt Act Doctrine and Emergency Rule 9**

23        Plaintiffs' § 1986 claim is subject to a one-year statute of limitations, see 42 U.S.C. § 1986

24  (stating that "no action under the provisions of [§ 1986] shall be sustained which is not

25  commenced within one year after the cause of action has accrued"), and Plaintiffs' other claims

26  (including the § 1985 claim and the five claims under § 1983) are subject to California's two-year

27  statute of limitations for personal injury actions. See Zamorano v. City of San Jacinto, 585 Fed.

28  Appx. 397, 398 (9th Cir. 2014) (finding that the claim "under 42 U.S.C. § 1986 was governed by a

one-year statute of limitations" and that "claims under §§ 1981, 1983, and 1985 were governed by

a two-year statute of limitations, borrowed from California law" (citing Cal. Civ. Proc. Code §

335.1 and Lukovsky v. City of San Francisco, 535 F.3d 1044, 1051 (9th Cir. 2008)).

Plaintiffs contend that their conspiracy claims[5] are not time-barred, even though Shaw's

death occurred on September 6, 2018 and this action was not filed until April 22, 2021, because

the "last overt act" in the Individual Defendants' conspiracy to deprive Shaw of constitutional

rights did not occur until Shaw's falsified death certificate was issued on April 1, 2019, see Doc.

No. 26 at 7:21-3, and because applicable statutes of limitations were extended by the California

Judicial Council's Emergency Rule of Court Rule 9 ("Emergency Rule 9"). Id. at 8:4-15.

Emergency Rule 9 tolls civil statutes of limitations that exceed 180 days "from April 6, 2020 until

October 1, 2020," see Cal. Rules of Court app. I, Emergency rule 9(a) (adopted April 6, 2020,

amended effective May 29, 2020), available at https://www.courts.ca.gov/documents/appendix-

i.pdf, and federal courts in California have found that it has the practical effect of adding 178 days

to statutes of limitations that had not run prior to April 6, 2020. See Gianelli v. Schoenfeld, 2021

WL 4690724, at *18–19 (E.D. Cal. Oct. 7, 2021), report and recommendation adopted, 2021 WL

5154163 (E.D. Cal. Nov. 5, 2021) (collecting cases); but see, Sholes v. Cates, 2021 WL 5567381,

at *5 (E.D. Cal. Nov. 29, 2021) (finding Emergency Rule 9 inapplicable in federal court).

The Ninth Circuit uses the last overt act doctrine to "determine[] the accrual of civil

conspiracies for limitations purposes." Gibson v. United States, 781 F.2d 1334, 1340 (9th Cir.

1986), cert. denied, 479 U.S. 1054 (1987) (citations omitted). Under this doctrine, "[i]njury and

damage in a civil conspiracy action flow from the overt acts, not from 'the mere continuance of a

conspiracy.' " Gibson, 781 F.2d at 1340 (quoted source omitted). Thus, a civil conspiracy cause of

action "runs separately from each overt act that is alleged to cause damage to the plaintiff." Id.

"[P]laintiffs may recover only for the overt acts … that they specifically alleged to have occurred

---

[5] "The 'last overt act' doctrine applies *only* to determine the accrual of civil conspiracy claims." Yan Sui v. 2176 Pac. Homeowners Ass'n, 2012 WL 6632758, at *16 (C.D. Cal. Aug. 30, 2012), report and recommendation adopted, 2012 WL 4900427 (C.D. Cal. Oct. 16, 2012), aff'd, 582 F. App'x 733 (9th Cir. 2014) (emphasis original). It is not entirely clear which of Plaintiffs' Third, Fourth, Fifth, Sixth and Seventh Causes of Action are intended as conspiracy claims, but the Court assumes, for the sake of this analysis, that they could all be read that way.

1   within the [applicable] limitations period," and the continuance of a conspiracy beyond the date

2   when injury or damage occurs does not delay accrual of a claim or otherwise extend the applicable

3   statute of limitations. Id.; see also, Hoffman, 268 F.2d at 302–03.

4        In other words, Plaintiffs' contention that the statute of limitations does not begin to run on

5   any part of a conspiracy claim until the last overt act in furtherance of the conspiracy takes place is

6   incorrect. See Gibson, 781 F.2d at 1340 (rejecting theory that "the statute of limitations does not

7   begin to run on any part of a plaintiff's claim until the 'last overt act' pursuant to the conspiracy

8   has been completed"). Barring other grounds for delaying accrual, the "last overt act alleged from

9   which damage could have flowed" is not the first date but rather the "last possible date" on which

10  a limitation period applicable to a conspiracy claim can be triggered. Lambert v. Conrad, 308 F.2d

11  571, 571 (9th Cir. 1962) (citations and internal quotation marks omitted).

12       Plaintiffs allege that an agreement formed by the Tuolumne Individual Defendants and the

13  other Individual Defendants prior to September 6, 2018 "made possible" conduct on the part of the

14  CDCR Defendants that led to Shaw's death. Doc. No. 7 at 27:9-15. Indeed, Plaintiffs go to some

15  lengths in the opposition to stress that their claims survived to Shaw's estate because they accrued

16  *"before"* Shaw's death and are based on "conspiratorial actions committed *before*, as

17  distinguished from *after*, [Shaw's] death." Doc. No. 26 at 5:26 (emphasis original). There is no

18  reason under the last overt act doctrine that the statute of limitations for parts of a conspiracy

19  claim arising from such conduct would not start running by September 6, 2018.

20       Further, conduct that occurred after Shaw's death cannot constitute an overt act in

21  furtherance of a civil conspiracy to violate Shaw's constitutional rights as an SCC inmate because

22  they plainly could not have caused Shaw's death or the conditions that allegedly resulted in

23  Shaw's death. See Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1990), as amended

24  on denial of reh'g (Feb. 27, 1991), as amended on denial of reh'g (May 24, 1991) (liability

25  requires "overt acts, done in furtherance of [a] conspiracy, that are both the cause in fact and

26  proximate cause of plaintiffs' injuries"). Thus, the falsification of Shaw's death certificate—as

27  well as alleged improprieties with respect to Shaw's autopsy and the investigation of Shaw's

28  death—are irrelevant to the accrual of Plaintiffs' claims, as pled, for purposes of the last overt act

1   doctrine. See Gibson, 781 F.2d at 1340.

2       Finally, as Defendants point out, see Doc. No. 29 at 6:9-7:3, the Ninth Circuit found in

3   *Guyton v. Phillips*, 606 F.2d 248 (9th Cir. 1979) that protections afforded by § 1983 and § 1985 do

4   not "extend to dead human beings" and that the acts at issue in that case—which included

5   presenting false information and concealing information in connection with a fatal officer-

6   involved shooting—were not actionable under the Civil Rights Act because they occurred after the

7   victim's death. Id. at 249-51. Therefore, conduct that occurred after September 6, 2018 cannot

8   provide a basis for civil rights claims distinct from those that have already been pled.

9       In short, there is no scenario in which an overt act in furtherance of a conspiracy to violate

10  Shaw's constitutional rights could have occurred after September 6, 2018. Under the last overt act

11  doctrine, therefore, September 6, 2018 is the last day on which Plaintiffs' conspiracy claims could

12  have accrued. See Lambert, 308 F.2d at 571. Given that fact, the one-year limitation on Plaintiffs'

13  § 1986 claim ran on September 6, 2019—several months before Emergency Rule 9 took effect on

14  April 6, 2020, see Simon Streets v. Space Systems/Loral, LLC, 2021 WL 4146962, at *5 (N.D.

15  Cal. Sept. 13, 2021) ("California's ER 9 ... does not revive lapsed claims."), and the Court agrees

16  with Defendants that the statute of limitations on Plaintiffs' § 1983 and § 1985 claims expired no

17  later than March 1, 2020, even with the 178-day extension under Emergency Rule 9. Plaintiffs'

18  arguments with respect to the last overt act doctrine and Emergency Rule 9 are, therefore,

19  unavailing.

20      **2. Delayed Discovery**

21      Defendants argue that Plaintiffs are not entitled to delayed accrual (or tolling) under the so-

22  called "discovery rule." Doc. No. 19-1 at 12:8-13:18. Under this rule, a statute of limitations "only

23  begins to run once a plaintiff has knowledge of the 'critical facts' of his injury, which are 'that he

24  has been hurt and who has inflicted the injury.'" Bibeau v. Pac. Nw. Rsch. Found. Inc., 188 F.3d

25  1105, 1108 (9th Cir. 1999), opinion amended on denial of reh'g, 208 F.3d 831 (9th Cir. 2000)

26  (quoting United States v. Kubrick, 444 U.S. 111, 122 (1979)). A plaintiff must, however, "be

27  diligent in discovering the critical facts," and consequently, "a plaintiff who did not actually know

28  that his rights were violated will be barred from bringing his claim after the running of the statute

1   of limitations, if he should have known in the exercise of due diligence." <u>Id.</u> (citing <u>Herrera–Diaz</u>

2   <u>v. United States</u>, 845 F.2d 1534, 1537 (9th Cir. 1988)).

3       As the Ninth Circuit has explained, "[t]he party seeking the benefit of the avoidance of the

4   statute of limitations carries the burden of proof to establish the elements, ... [and] all

5   presumptions are against him since his claim to exemption is against the current of the law and is

6   founded on exceptions." <u>NLRB v. Don Burgess Constr. Corp.</u>, 596 F.2d 378, 383 n.2 (9th Cir.

7   1979) (citation omitted). Thus, for the delayed discovery exception to apply, the burden is on the

8   plaintiff to show diligence. <u>Id.</u>; <u>see also</u>, <u>Cal. Sansome Co. v. U.S. Gypsum</u>, 55 F.3d 1402, 1406–

9   07 (9th Cir. 1995) ("[As to the] 'discovery rule,' ... [a]ll parties agree that the burden is on [the

10  plaintiff] to plead and prove the facts necessary to toll the limitations period once it is established

11  that it would have otherwise commenced."). The Ninth Circuit has held that, to meet this burden, a

12  plaintiff must allege: "(1) the time and manner of discovery and (2) the inability to have made

13  earlier discovery despite reasonable diligence." <u>Schwartz v. Finn</u>, 2022 WL 636641, at *1 (9th

14  Cir. Mar. 4, 2022) (quoting <u>Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.</u>, 710 F.3d 946, 975

15  (9th Cir. 2013) (internal quotation marks omitted); <u>see also</u>, <u>Wilson v. Household Fin. Corp.</u>, 2013

16  WL 1310589, at *4 (E.D. Cal. Mar. 28, 2013) ("To rely on a claim of delayed discovery, a

17  plaintiff must allege facts showing that the basis of the claim could not have been discovered

18  earlier, even in the exercise of reasonable diligence ….").

19      The FAC states that "[f]acts related to the individual defendants' participation in the civil

20  conspiracy alleged [in the FAC] did not become known to Plaintiffs until March of 2021, and

21  could not have been discovered sooner." Doc. No. 7 at 6:20-22. Not only are these allegations

22  conclusory and incomplete, but they are directly contradicted by Plaintiffs' allegation that the

23  falsified death certificate—which Plaintiffs characterize as an overt act in furtherance of

24  conspiracy—was issued on April 1, 2019. <u>See id.</u> ¶ 22. Further, Plaintiffs do not respond to

25  Defendants' arguments regarding delayed discovery or otherwise address the topic in the

26  opposition. Thus, the Court concludes that Plaintiffs are not taking the position that delayed

27  discovery applies to their claims. <u>See Montgomery v. Specialized Loan Servicing, LLC</u>, 772 F.

28  App'x 476, 477 (9th Cir. 2019) (finding that district court properly dismissed claims where

"plaintiffs failed to respond to [] arguments raised in defendants' motion to dismiss"); <u>Doe v.</u>
<u>Bredesen</u>, 507 F.3d 998, 1007 (6th Cir. 2007) (holding that an opposition to a motion to dismiss
that fails to address an argument concedes the point); <u>Pecover v. Electronics Arts, Inc.</u>, 633 F.
Supp. 2d 976, 984 (N.D. Cal. 2009) (finding plaintiffs "effectively conceded" issues that they
"fail[ed] to address in their opposition memorandum").

### 3. Conclusion Regarding Timeliness of Plaintiffs' Claims

In sum, the statute of limitations runs from September 6, 2018 at the latest for Plaintiffs'
conspiracy claims under the last overt act doctrine, and the last overt act doctrine has no
applicability to claims that do not involve conspiracy. Given the filing date of this action, tolling
under Emergency Rule 9 is insufficient to save claims running from September 6, 2018. Finally,
Plaintiffs did not adequately plead delayed discovery in the FAC and effectively concede in the
opposition that delayed discovery does not apply. The Court therefore finds that all of Plaintiffs'
claims are time-barred. This defect cannot be cured with amendment so the claims will be
dismissed with prejudice. <u>See</u> <u>Garmon</u>, 828 F.3d at 842.

## **CONCLUSION**

As set forth above, Plaintiffs have failed to state a claim against the Tuolumne Defendants.
Except for the First Cause of Action and Second Cause of Action, the deficiencies in Plaintiffs'
allegations could conceivably be cured. However, all Plaintiffs' claims against the Tuolumne
Defendants (including the additional claim they seek to bring under § 1983 in an amendment to
the FAC) are also time-barred. Dismissal will therefore be with prejudice. As such, it is
unnecessary for the Court to address the question of claim splitting, and the Tuolumne
Defendants' request for judicial notice (which pertains solely to claim splitting) is denied as moot.
<u>See</u> Doc. No. 19-3. In addition, the Court will dismiss the First Cause of Action (under § 1985)
and the Second Cause of Action (under § 1986) with prejudice as to all remaining parties
(including the Stanislaus Defendants) on the ground that Plaintiffs' have not alleged—and cannot
allege—a class protected by § 1985. Finally, Plaintiffs will be ordered to show cause in writing
within 14 days of the date of electronic service of this order why their claims against the
Stanislaus Defendants should not be dismissed as time-barred. If they fail to do so, all claims

against the Stanislaus Defendants will be dismissed with prejudice as time-barred and this case will be closed without further notice to the parties.

### ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. The Tuolumne Defendants' motion to dismiss (Doc. No. 19) is GRANTED in its entirety and the First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action in the FAC (Doc. No. 7) are DISMISSED WITH PREJUDICE as to the Tuolumne Defendants;

2. Plaintiffs' request to amend the FAC to add a new civil conspiracy claim under 42 U.S.C. § 1983 is DENIED;

3. The Clerk is respectfully DIRECTED to terminate the County of Tuolumne, Rodney Hobbs, Oliver Imlach and Bill Pooley as defendants in this action;

4. The First Cause of Action and Second Cause of Action are also DISMISSED WITH PREJUDICE as to the County of Stanislaus, Adam Christianson, Sung-Ook Baik, and Frank Leyva;

5. Plaintiffs are ORDERED to show cause in writing within 14 days of the date of electronic service of this Order why all claims against the Stanislaus Defendants should not also be dismissed with prejudice on the ground that they are time-barred;

6. If Plaintiffs fail to comply with this Order, the claims against the Stanislaus Defendants will be dismissed with prejudice and this case will be closed without further notice to the parties.

IT IS SO ORDERED.

Dated:  __July 1, 2022__                          _____

SENIOR  DISTRICT  JUDGE